FYAN v. McNUTT.

1. APPEAL AND ERROR—NON-JURY LAW CASE—FINDINGS OF COURT—COURT RULES.

Supreme Court is not bound by findings or lack of findings of the trial court on review of a non-jury law case, under Court Rule No. 64 (1933).

2. SAME—FINDINGS OF COURT—FRAUD—EVIDENCE.

Finding of trial court in action on commission agreement in relation to real estate that it was obtained under such circumstances as amounted to actionable fraud *held*, not against the preponderance of the evidence received at trial of which no complaint is made except as to conclusions reached by the court.

3. FRAUD—MEETING OF THE MINDS—CONTRACTS.

False representations made in connection with an attempt to "high pressure" an individual into an agreement do not permit such freedom of the will as is necessary for a meeting of the minds to make a valid contract.

WIEST, J., dissenting.

Appeal from Wayne; McPeek (Russell R.), J., presiding. Submitted January 4, 1934. (Docket No. 44, Calendar No. 37,082.) Decided April 3, 1934. Rehearing denied June 4, 1934.

Assumpsit by Clarence E. Fyan against Edna E. McNutt for commissions under an agreement relative to disposal of real estate. Judgment for defendant. Plaintiff appeals. Affirmed.

*Robert M. Brownson; Kenneth Murray* and *Paul Marco,* for plaintiff.

*Fred A. Lehmann,* for defendant.

BUSHNELL, J. This case involves plaintiff's right to a commission of 5 per cent. on the amount paid defendant by the county of Wayne in satisfaction of a condemnation award. The circuit judge concluded that, although plaintiff, a real estate broker, was instrumental in bringing about the appropriation of defendant's land by Wayne county, the agreement upon which the suit was based was obtained under such circumstances that the proofs revealed actionable fraud. Accordingly, a judgment of no cause of action was entered.

Defendant was the owner of a 50-acre tract, one of 16 parcels included in a 631-acre site assembled and offered to Wayne county by plaintiff for use as an airport. On April 26, 1928, she gave plaintiff an option to purchase her land for $56,250 at any time prior to September 1, 1928. The option contained the following language:

"It is contemplated that the above premises are to be a part of a tract of land to be submitted to a city, county or State organization or governmental agency to be used for the purpose of an airport and it is therefore agreed and understood that these premises shall not be assigned by the purchaser for any other purpose, and that the purchaser's profit on such contemplated sale of these premises shall be such sums as he may obtain for the premises in excess of the undersigned's selling price."

Other locations were also under consideration by the county board of supervisors and considerable interest was aroused in the project. On about July 25, 1928, the press announced that the county would probably institute condemnation proceedings rather than obtain a site by purchase. This determination on the part of the board of supervisors was later expressed by formal resolution on August 14,

1928. On the evening that the newspapers published their predictions of condemnation, plaintiff visited the home of William Bower, a brother of defendant. Present at the ensuing interview were William and his wife, Henry, another brother, and Ada Belle Harvey, all owners of parcels in the tract plaintiff had assembled for sale. Their signatures were secured to what appellant describes as a "commission agreement." This is the instrument sued upon and is as follows:

"Detroit, Michigan, July 26, 1928.
"Mr. Clarence E. Fyan,
"Detroit, Mich.
"*Dear Sir:*
"In consideration of services rendered by you and to be rendered by you we agree to compensate you for such service to the extent of five per cent. of such sums as may be paid us by the county of Wayne, Michigan, in the event of purchase or condemnation of our pieces and parcels of land located in section 14 of Romulus township, Wayne county, Michigan.
"The above commission to be paid upon completion sale or condemnation above referred to.
"Signed and sealed this 26th day of July, 1928.

|  |  |
|---|---|
|  | Wm. Bower |
|  | Olive Bower |
| "Signed in the presence of: | Ada Belle Harvey |
| Alfred L. Bower | Henry Bower |
| Nelson L. Bower. | Edna McNutt |
|  | Edward Ott |
|  | Ella Ott." |

Plaintiff then drove to see the defendant, accompanied by William and Henry Bower; on the way they were joined by Alfred Bower, a cousin, and Nelson, his son, the entire party arriving at the defendant's home in the neighborhood of one o'clock

in the morning. Mrs. McNutt had been asleep for several hours, but was awakened and forced to engage in a discussion of the project in spite of her protests. Some of the group met in her living room, the others "stood outside an open screen door and observed the conference from there."

Plaintiff admitted on the witness stand that the defendant protested getting up; that she did not want to sign the paper, and that he told her he had to have the paper in Detroit the next morning. Defendant testified that plaintiff informed her that the new agreement was only "a slight change from the option paper" and that "it would be no additional expense," and also that he led her to believe the whole airport proposition would fall through if it was not signed then and there. Plaintiff urged upon her the necessity for haste when she requested that she be allowed to keep the paper until morning so that she "could take it away and have somebody look it over to tell me if it was all right to sign it or not." No copy was left with her. Her testimony leaves the impression that she was "high pressured" into signing, after a conversation lasting some 45 minutes and consisting largely of argument and dispute.

It is apparent from the remainder of the testimony that the court was correct in its conclusion that plaintiff made a number of false representations to defendant. His statements to the effect that the agreement had to be signed and in Detroit by morning and that her failure to sign would mean a collapse of the project are not borne out by the record, nor is it true that the commission and option agreements were practically the same in legal effect. Plaintiff may have been in doubt as to the protection his option agreement would give him in the event of condemnation of the property, and it was

only natural that he should try to strengthen his position after all the work he had done on the project. His labors resulted in a definite financial betterment of the defendant's position. However, the methods he adopted in securing defendant's signature to the commission agreement are open to question and may forfeit his right to compensation. We must determine whether his statements, taken together with all the circumstances, sustain the findings of the trial judge.

Fraud is not easily defined, and perhaps it is well that it should not be strictly defined. It varies in its form; what may be perfectly proper under one set of circumstances becomes fraudulent under another. The parties, their capacities and relation to each other, are all determining factors in this type of case.

We are not unimpressed by the able argument on the facts presented by the plaintiff and do not hesitate to say that an extremely close question has been presented to us. We are not in as advantageous a position to determine the true facts as the trial judge, who saw and heard the witnesses. The circumstances attending the after-midnight conference undoubtedly had much to do with his determination. A part of the opinion he filed reads:

"My view of this matter is that plaintiff and the others came to defendant's home in the middle of the night, at a time when she was poorly prepared to insist upon her free will, and that the representations made to her at this unseemly hour were calculated to break down her resistance to making this further agreement; * * * that she was entitled to have fair opportunity, at a reasonable time, to consider them, and that in view of these facts, the conduct of plaintiff was in effect fraudulent, and should not be approved. In other words, I think a case of

actionable fraud, as defined by the authorities, has been supported by the defendant's proofs."

Appellant relies in part on Michigan Court Rule No. 64 (1933). We recently held:

"Under this rule, on review of a non-jury law case, this court is not bound by the findings or lack of findings of the trial court. Instead, the record as a whole is considered and determination made of such questions raised by the appeal as are necessary to decision." *Burchard* v. *Otis Elevator Co.*, 261 Mich. 142.

This we have done, yet we still find ourselves unable to separate the actual language of the representations from the circumstances under which they were made. They must be considered in the light of the conditions attending their utterance, and the relations of the parties to each other and to the project, as well as their interest or lack of interest in the final culmination of the entire plan. The late hour of the night at which her signature was secured over her protest and plea that she be given until the next day to consider her action, the urge of the moment, the co-operation of the others present in their desire to obtain a good price for their farm lands, the plaintiff's anxiety over the seeming weakness of his original option, all combined to produce a situation in which, to say the least, it is doubtful that the defendant had an opportunity to exercise her own free will. The trial was conducted in such a manner that even the appellant makes no substantial complaint except as to the conclusions reached by the court. The right of trial by jury was waived and we cannot say that the findings were against the preponderance of the evidence.

A valid contract can be entered into only when there is a meeting of the minds of the parties under circumstances conducive to a free and voluntary execution of the agreement contemplated. It must be conceived in good faith and come into existence under circumstances that do not deprive the parties of the exercise of their own free will. When false representations are made in connection with an attempt to "high pressure" an individual into an agreement, it cannot be said that freedom of will is allowed.

The judgment is affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, BUTZEL, and EDWARD M. SHARPE, JJ., concurred with BUSHNELL, J.

WIEST, J. (*dissenting*). I agree with the finding of the circuit judge that defendant knew what was in the paper she signed, but I cannot agree that she was fraudulently induced to sign by a false representation that plaintiff had to have the paper in Detroit the next morning. Such representation, if made, was not a fraudulent inducement.

Plaintiff first held an option and, learning that the county intended to condemn the land and his option would prove worthless, he wanted a commission agreement to protect him for the work he had done and would do. The option gave defendant all above $56,250, procured for the land. On condemnation defendant was awarded $67,308.46.

Plaintiff thought that speedy action in procuring a commission agreement was necessary. When he went to defendant's home he was accompanied by her brothers, two of whom had, earlier that night, signed the agreement as had also a sister. Defendant's brother William was present at the time she

signed the commission agreement, disputes her claim of what occurred and testified that it had long been talked that plaintiff was to have five per cent. commission.

I find no fraud invalidating the agreement sued upon and, in my opinion, the judgment should be reversed, with costs to plaintiff, and the case remanded to the circuit court with direction to enter judgment for plaintiff.