[Civ. No. 4910.   Third Appellate District.—April 18, 1934.]

VIRGINIA WEGER, Respondent, v. JOSEPH ROCHA, Appellant.

J. Logan Beamer and McEnerney & Morris for Appellant.

Ernest S. Mitchell for Respondent.

PLUMMER, J.—Plaintiff obtained judgment against the defendant in an action for personal injuries suffered by her in an automobile accident which occurred on the eighteenth day of July, 1931, on a public highway in Humboldt County. From this judgment the defendant appeals.

No contention is made in the appellant's brief that the judgment of the court is not sustained by the testimony showing gross negligence on the part of the defendant, nor is there any testimony in the record that the judgment is in any particular excessive. In view of the injuries suffered by the plaintiff, such contention would have no basis if made.

The action was tried before the court sitting without a jury. The answer filed by the defendant sets up a special defense alleging settlement with the plaintiff by the payment to her of the sum of $475; and, further, that prior to

the action a certain check (miscalled a "draft" in the appellant's brief), left with the plaintiff at the time of the signing of the paper hereinafter referred to, was not returned to the defendant prior to the beginning of this action.

As against the special defense, the plaintiff relied upon testimony to establish fraud, menace, duress and undue influence, and specially, that the signature of the plaintiff to the paper hereinafter referred to was obtained by fraud and undue influence on the part of an agent representing the Banker's Indemnity Insurance Company, insurance carrier for the defendant Rocha.

Finding No. 10 of the court is in the following words and figures: "That the plaintiff, on the 25th day of August, 1931, signed the release attached to the defendant's special defense, but that said release was and is void, and was secured by fraud, duress, menace and undue influence."

The release referred to is in the following words and figures: "Know all men by these presents, That I, Virginia Weger, of lawful age, residing at 1927 T Street, Eureka, California, for the consideration of Four Hundred Seventy Five and 00/100 ($475.00) dollars, to me in hand paid by Banker's Indemnity Insurance Company, and/or Joe Rocha, the receipt whereof is hereby acknowledged, have released and discharged, and by these presents do, for my heirs, executors, administrators and assigns, release and forever discharge the said Banker's Indemnity Insurance Company, and/or Joe Rocha, of and from all claims, demands, damages, actions, causes of action or suits at law or in equity, or (of) whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by said personal injuries arising out of automobile accident prior to and including the date hereof, and particularly on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 19th day of July, 1931, at or near five miles north of Eureka, California, on Redwood Highway.

"In Witness Hereof, I have hereunto set my hand and seal this 25th day of August, 1931.

"VIRGINIA WEGER (Seal)

"R. O. BRADFORD ⎫
"L. H. GUTHRIDGE ⎬ witnesses

"JENNIE M. KANE (Seal)

"State of California, ⎱ ss
"County of Humboldt ⎰

"On this 26th day of August in the year 1931, before me personally came Virginia Weger, to me known and known to me to be the person who (is) described in and who executed the foregoing instrument, and acknowledged to me that . . . executed the same.

"JENNIE M. KANE."

While the foregoing release appears to have been signed as witnesses to the signature of the plaintiff, by L. H. Guthridge, R. O. Bradford and Jennie M. Kane, the record shows absolutely that none of those persons were present at the time the release was signed. And as further evidencing to the trial court the questionable character of the instrument, the acknowledgment which appears to have been taken on the twenty-sixth day of August, 1931, before Jennie M. Kane, does not evidence the actual facts. Miss Weger did not appear before Jennie M. Kane to acknowledge the instrument, nor is there any showing that Jennie M. Kane ever asked the plaintiff if she acknowledged the instrument. On the contrary the evidence shows that the agent of the company had the names of the purported witnesses, and also the acknowledgment attached to the instrument of his own volition.

The check left with the plaintiff at the time of signing the release is worded as follows:

"Payable through
"FIDELITY UNION·TRUST COMPANY OF NEWARK, N. J.

"Eureka, California, August 25, 1931.
"NO PROTEST
"No. 11892

"On demand pay to the order of Virginia Weger . . . first x the sum of Four Hundred Seventy Five and 00/100 dollars $475.00.
add'l

"Final x in full settlement of any and all claims for personal injury on account of policy No. AP215623.

| Key No. | Class. | File number. | Assured. | Claimant. | Date of acc. or loss |
|---------|--------|--------------|----------|-----------|---------------------|
| 32 | AL | 61 | Joe P. Rocha | Virginia Weger | 7–19–31 |

"RAPP & COMPANY, INC.

"GEORGE B. RAPP, Adjuster.

"To the Bankers Indemnity Insurance Company.

"Newark, New Jersey.

"Form 1008A."

■ It is first contended that finding No. 10 set out herein is only a conclusion of law, and is not sufficient, even though it might be sustained by the testimony. This contention, however, appears to be without merit, as a finding in almost the exact language as appears in the instant case was approved by the Supreme Court in the case of *Hick* v. *Thomas*, 90 Cal. 289–296 [27 Pac. 208]. ■ The finding of the court that the release was void does not appear to be sustained by the testimony. A review of the record leads to the conclusion that at the time of the signing of the instrument the plaintiff was not incompetent and was not unable to comprehend the contents and effect of the instrument. This, however, is not determinative of the issues presented upon this appeal.

■ Before considering further the findings of the court it is well to set forth the circumstances surrounding the execution of the release. As stated, the injuries suffered by the plaintiff occurred on the eighteenth day of July, 1931, resulting in two fractures of the pelvic bone and a fracture or injury of and to the fifth lumbar vertebra. The plaintiff was confined in a hospital for approximately three months. At the time of the execution of the release the plaintiff was not only confined in the hospital, but was in a cast in which she had been placed and kept for a number of days, and in which she was required to remain for many days after the date of the execution of the release. The hospital bills incurred by the plaintiff amounted to the sum of $402.25; doctor's bill, $300; brace, $7.50; aggregating $709.75. The settlement calls for the payment of $475. The testimony of the agent acting for the insurance company and the defendant was that no consideration was given to the injuries suffered by the plaintiff; that compensation for her injuries formed no part of the settlement; that he made some inquiries as to the probable amount of

the hospital and doctors' bills, and took into consideration no other items. This is the effect of his testimony as it appears in the record.

The court found the injuries suffered by the plaintiff, together with the hospital and doctors' bills to amount to the sum of $8,276.25. As we have stated, no objection is raised that the finding of the court in this particular allows any excessive damages. It necessarily follows that the amount agreed to be paid by the insurance company was and is grossly inadequate. Not only does it fail to meet the hospital and doctors' bills by $234.75, but it leaves the plaintiff absolutely uncompensated for the bodily injuries sustained by her, which were still manifestly apparent at the time of the trial, and which occasioned the plaintiff much pain and suffering. No language is necessary to enforce the conclusion that two fractures of the pelvic bone and an injury to any portion of the vertebrae fall within the classification of serious bodily impairment.

The record shows that the agent negotiating the settlement on the part of the insurance company was advised of these injuries, but made no mention thereof to the plaintiff. The record also shows that the agent of the insurance company called upon the plaintiff a number of times; that at the time the release was signed the plaintiff was in a highly nervous and hysterical condition. It likewise shows that the agent of the company spent two hours with the plaintiff in his effort to induce her to sign the release set forth herein; and also that the plaintiff signed the release in order to terminate the last interview. In fact, it does not appear from the appellant's brief to be seriously questioned that the agent of the company did use undue influence in seeking to have the plaintiff sign the release. We base this statement upon the following portion of the appellant's brief, which is the only portion thereof touching the findings of the court upon this question. We quote therefrom as follows: "The evidence conclusively shows that the plaintiff knew the nature and purport of the document she signed (referring to the testimony in the record, giving pages and lines). The only evidence in the case which tends to establish the purported finding of the court that the release was obtained by fraud, menace, duress and undue influence is the testimony of plaintiff's witnesses that she was in a

nervous condition. (No citation is made to the record.) This has been held insufficient in the case of *Winstanley* v. *Ackerman*, 110 Cal. App. 641, at page 647 [294 Pac. 449], wherein the court said: " 'Obviously, nervousness and neurasthenia do not constitute mental incompetency to such an extent as to render the transaction void *ab initio* even though the transaction may be avoided by a timely rescission and tender of benefits received. We think the failure of the record to disclose a tender of the money received by plaintiff will necessitate a reversal of the judgment.' " This statement in the appellant's brief may be admitted, and yet it does not set forth any reasons why this court should disturb the finding of the trial court, either on the ground of fraud, menace, duress or undue influence.

Subdivision 3 of section 1575 of the Civil Code, in defining what constitutes undue influence, reads: "In taking a grossly oppressive and unfair advantage of another's necessities or distress."

Here we have a working woman employed in a woolen mill, confined in a cast flat on her back, in a highly nervous and hysterical condition, suffering much pain, worried by her hospital and doctor's bills, importuned and importuned by the agent of the company offering a settlement amounting to a trifle more than one-half of the expenses just referred to, making no mention of not taking into consideration any compensation for the personal injuries suffered by the plaintiff. A reading of the agent's testimony given at the trial shows conclusively that all that was brought to the attention of plaintiff were the expenses just referred to. The release was not signed until a number of days after the infliction of the injuries from which the plaintiff was suffering. The record discloses that she was still in a serious physical condition.

While inadequacy of the money agreed to be paid, standing alone, is not a sufficient badge of fraud upon which to base a verdict, unless the amount is in itself so insufficient as to shock the conscience of the court, it may nevertheless be taken into consideration with all the circumstances attendant upon and surrounding the transaction.

We find the following in 6 California Jurisprudence, page 189, which sets forth the rule upon the question of adequacy: "The adequacy of the consideration is an element

of the good faith of a transaction, and has no bearing upon whether the consideration is a valuable or a good one. Where parties are both in a situation to form an independent judgment concerning a transaction, and act knowingly and intentionally, mere inadequacy in the price, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the amount named is not adequate, a vendor should so determine in his own mind before he signs the contract, but having signed it and stated the amount for which he will sell, he must live up to his agreement. Any other rule would, it has been said, make a contract worthless and mere waste paper. In fact, inadequacy of consideration alone, without fraud or something of the nature of fraud, is never considered even in equity, except as a defense to the right to enforce specifically an executory agreement. It may be a circumstance more or less potential in the determination of fraud as a question of fact, but inadequacy of consideration, at least unless such as to shock the conscience, is not of itself sufficient to authorize the court to find fraud, as a conclusion of law.''

That the sum of $475 is glaringly inadequate as a settlement in this case where a judgment for $8,276.25 is not questioned as being excessive, appears to us an inescapable conclusion, and sufficient to shock the conscience of the trial judge.

The main contention of the appellant in this case is to the effect that there is no finding made by the court as to the offer to return the check left with the plaintiff by the agent of the company, and also that the testimony does not show any offer to return the same. It does appear from the record that the possession of the check was retained by the plaintiff or by her attorneys until the time of the trial, and that it was filed as an exhibit in the case, and therefore placed within the control and custody of the court. Ordinarily, in the cancellation or rescission of contracts, it is incumbent upon the parties seeking rescission to restore everything of value that has been received. In this case, however, no money was paid by either the insurance company or the defendant to the plaintiff. A check only, was left by an agent of the insurance company, with the plaintiff. There is nothing in the

record indicating that the check was received in payment. Therefore, the law, as stated in 20 California Jurisprudence, page 920, is applicable here, to wit: ''The giving of a note or check of a debtor or a third party for the amount of a debt does not constitute payment unless there is an agreement between the parties that it shall be so accepted. The rule is based upon the obvious ground that nothing is to be considered as payment in fact but that which is in truth such unless something else is expressly agreed to be received in its place.'' This statement of the law is further supported by the text found in 48 C. J., page 632, as follows: ''A creditor rescinding a conditional payment cannot recover upon the original debt if he fails to account for the paper received, and the necessity of so accounting is not removed by a release from liability on such ·paper. The obligation to account is satisfied by the production of the paper in court, to be canceled, delivered to the defendant, or otherwise disposed of, as the court may direct, and is also satisfied by showing that such paper has been surrendered or tendered back to the debtor,'' etc. And further on the text reads: ''In such case as that of rescission of a conditional payment, the creditor does all that is required of him if he produces the paper at the trial and offers to deliver it to defendant.'' Likewise, as said in substance in the case of *Peardon* v. *Markley,* 50 Cal. App. 257 [195 Pac. 70] : if it is apparent from the record that a tender, however complete, would have been refused, a tender is unnecessary.

That the taking even of a note of a third person for an existing or prior indebtedness does not amount to payment also appears to be definitely decided in the case of *Merchants Nat. Bank* v. *Bentel,* 166 Cal. 473–477 [137 Pac. 25].

In 4 California Jurisprudence, page 767, referring to the case of *Kelly* v. *Owens,* 120 Cal. 502 [47 Pac. 369, 52 Pac. 797], we find the following pertinent language: ''As stated by McFarland, J., in the leading case, there are exceptional cases where restoration or an offer to restore before suit brought is not necessary, as for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory· note of the defendant; or where the contract is absolutely void; or where it clearly appears

that the defendant could not possibly have been injuriously affected by a failure to restore; or where, without any fault of plaintiff, there have been peculiar complications which make it impossible for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by final decree fully adjust the equities between the parties."

The check in this case given by the insurance company is of no higher dignity than would have been the promissory note of the insurance company. Neither instrument would have amounted to payment, and as stated in the other authorities cited, when delivered in court, became a piece of paper, subject to the orders of the court. Nor does it appear that the defendant in this case has suffered any injurious consequences by reason of anything that occurred in connection with the check set forth herein.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 14, 1934.