[Civ. No. 5416. Third Appellate District.—September 28, 1336.]

CABBLE C. MARTIN, Respondent, v. POSTAL UNION LIFE INSURANCE COMPANY (a Corporation), Appellant.

J. F. Riley for Appellant.

L. DeWitt Spark for Respondent.

PLUMMER, J.—This action is based upon an insurance policy issued to the plaintiff by the Pacific States Life Assurance Company, and liability, if any, assumed by the defendant. The policy was issued to the plaintiff on the 13th day of June, 1933, the insuring clause of which reads as follows: "Loss of life, limb, sight or time, the cause of which originates and loss occurs while this policy is in full force and effect, which loss results directly and independently of all other causes, from accidental bodily injuries, hereinafter referred to as 'such injury.'"

For total disability, compensation was to be made at the rate of $100 per month. Part 3, subdivisions A and B of the policy, fixes the liability of the company, and is in the following words and figures:

"(A) If 'such injury' shall, within twenty (20) days from the date of the occurrence of the accident, totally and continuously disable the insured and during which time he shall be under the professional care and regular attendance of a legally qualified physician and surgeon, the Company will pay, for the period of such continuous total disability, Accident Indemnity at the rate per month provided in Part 1, subject to Aggregate Disability Indemnity, Part 7, Partial Disability.

"(B) Or, if 'such injury' shall not, within twenty (20) days from the date of the occurrence of the accident, cause total disability, but shall thereafter totally disable the insured; or, if 'such injury' shall, commencing on the date of the occurrence of the accident, or immediately following total loss of time, cause continuous partial disability, and during which time the insured shall be under the professional care and regular attendance of a legally qualified physician or surgeon, the Company will pay, for the period of such continuous disability, not to exceed three months, forty per cent (40%) of the Accident Indemnity at the rate per month provided in Part 1, subject to Aggregate Disability Indemnity, Part 7."

The complaint alleges that on or about the 16th day of September, 1933, the plaintiff was operating an automobile in the city of North Sacramento, and while so doing was injured in the collision which occurred between the automobile in which the plaintiff was riding and a truck then and there on the same highway, and as a result of the collision the plaintiff received a severe blow upon his body, resulting in severe contusions, bruises and a displaced vertebra. The testimony of Doctor Cook, to which we will hereinafter refer, who took an X-ray of the plaintiff's body, was to the effect that there was a break in the lower border of the third lumbar vertebra. Proof of injuries suffered by the plaintiff was made out by him on or about the 2d day of October, 1933, in which proof the statement appears that the plaintiff had suffered a wrenched back and other bodily bruises. Nothing is mentioned in the proof furnished by the plaintiff of the fact of injury to his spinal column. The plaintiff, after his injury on the 16th day of September, 1933, called a Doctor Jones, the company doctor for the corporation employing the plaintiff. It appears from the statement furnished by Doctor Jones, that only a cursory examination was made of the injuries suffered by the plaintiff. It contains nothing with reference to the injuries as shown by the X-rays and as testified to by Doctor Cook. The extent of the injury was not discovered by Doctor Jones, and of course was not disclosed to the plaintiff, and could not be included in his proof furnished to the appellant on the 2d day of October, 1933. Thereafter, on the 2d day of October, 1933, Doctor Jones having advised the plaintiff to return to work, the plaintiff did return to work for the P. F. & E. Company, where he had originally been employed as a car carpenter, it being his business to repair and restore to proper condition cars used by the P. F. & E. Company in its business. The record shows that the plaintiff continued in the employment of the P. F. & E. Company thereafter until up to and including the 17th day of November, 1933, when the extent of his injuries had become so aggravated that it was impossible for him to continue the employment in which he had previously been engaged. There is no contention in the record that the injury to the plaintiff was and is not serious; that during the time he was employed from October 2,

1933, to November 17, 1933, he suffered great pain and discomfort; that the injury he received was such as might very well have justified him in refraining from engaging in any employment whatsoever. The injury to the plaintiff having become so aggravated, on the 17th of November, 1933, or thereabouts, the X-ray examination heretofore referred to was had, and it was at that time discovered that the third lumbar vertebra in the plaintiff's back-bone had been injured. Thereupon, the plaintiff was sent to an hospital in San Francisco, where he remained for some weeks.

Upon the furnishing of the proofs by the plaintiff on the 2d day of October, 1933, indicating that he had lost fifteen days time, the appellant forwarded to the plaintiff a check in the sum of $46.66. This check purported to cover the period of time lost by the plaintiff by reason of the injury referred to. On the reverse side of this check there appeared an acknowledgment of receipt and release which was signed by the plaintiff and also by the plaintiff's wife. This release is in the following words and figures, to wit:

"Claim No. 78,328, received forty-six and 66/100 dollars from Postal Union Life Insurance Company in full payment, satisfaction, discharge and release of any and all claims myself, my heirs, executors, administrators or assigns may now have or hereafter have against said Company under its Policy No. 34,616 due to, or growing out of an accident sustained by me on or about September 16, 1933. I have read and understand the above release."

This release was set up in the defendant's answer and pleaded as an absolute bar of the plaintiff's right of recovery.

What we have said sufficiently shows that this release was made in entire ignorance of the extent of the injuries suffered by the plaintiff, and was the result of a mistake as to the extent of such injuries, and that the appellant, in sending the check for $46.66, including the release, was likewise acting under a mistake as to the extent of the injuries suffered by the plaintiff. The record also shows that the plaintiff resumed his occupation at the direction of Doctor Jones, the company doctor.

In addition to what we have set forth, the plaintiff attempted to introduce testimony as to the circumstances under which the release was signed, and also as to the proof which was furnished to the company on the 2d day of October, 1933. This followed after the introduction of the release just set forth herein. The testimony as to this point in the record reads as follows:

"Q. Did you read all those releases before you signed them? Mr. Riley: To which I object. A. No, sir, I didn't. Mr. Riley: Irrelevant, immaterial. The Court: There is nothing in the pleading about the release, is there? Mr. Riley: Only in the complaint, only in the answer, I mean. There is nothing in the complaint about it at all. The Court: What is the purpose of this? Mr. Spark: For the purpose of showing that he didn't understand what he was signing. The Court: You haven't alleged any fraud or inability. Sustain the objection. Mr. Riley: I ask that the answer go out. The Court: It may go out. Mr. Spark: Q. Mr. Martin, at the time you presented your claim to the Company, did you think, did you know, were you of the opinion that you had recovered from your injury? A. No, sir, I wasn't. Q. I say, you knew that to be a fact? A. Yes, sir. Q. Did your doctor advise you you had recovered from your accident? Mr. Riley: We object, not within any of the issues of this pleading, therefore, not pertinent, not competent. The Court: I don't see anything to support that testimony. I will sustain the objection."

Upon the objection of the appellant, testimony along the above-indicated lines was excluded by the court. The ruling of the court was and is clearly erroneous, the court seeming to labor under the impression that the plaintiff was under the necessity of alleging fraud, undue influence, mistake, etc., in order to introduce such testimony, overlooking the fact that section 462 of the Code of Civil Procedure provides that all new matter set up in the answer in avoidance, or constituting a defense is deemed controverted, and that no additional pleading is required on the part of the plaintiff. Section 448 of the Code of Civil Procedure does not change the rule of testimony in this particular, save and except as to the genuineness of the signatures to a written instrument set up in the answer,

and its execution, leaving open for the plaintiff to introduce any testimony that he may have in avoidance of the release and showing that it should not be given any force or effect.

As early as the case of *Montgomery* v. *Rauer,* 125 Cal. 227 [57 Pac. 894], the Supreme Court used the following language: "Nor may the further objection of appellant be sustained that the plaintiffs, not having pleaded an avoidance of the release, should not have been permitted to prove it. They were not compelled to anticipate defenses. If the release and discharge had been set out in bar of the action, still, under our system of pleading, which permits no replication, the defense of fraud would have been open to the plaintiffs without special averment."

In the case of *Weger* v. *Rocha,* 138 Cal. App. 109 [32 Pac. (2d) 417], an exactly similar situation was presented to this court. The plaintiff filed a complaint seeking damages for injuries sustained. It appears that after the injury the plaintiff had signed a release, and this release was set up in the defendant's answer. This court there said: "As against the special defense, the plaintiff relied upon testimony to establish fraud, menace, duress and undue influence, and specially, that the signature of the plaintiff to the paper hereinafter referred to was obtained by fraud and undue influence on the part of an agent representing the Banker's Indemnity Insurance Company, insurance carrier for the defendant Rocha." The opinion further goes on to show that the finding of the court to the effect that the release had been procured by fraud and undue influence was sustained by the testimony.  Under the circumstances just set forth, the appellant having blocked the plaintiff from introducing further testimony showing that both the proof and the release were executed under a mistaken idea as to the extent of the injuries received by him, and also, that the defendant in sending its check was not aware of the plaintiff's serious injuries, and obtained a release utterly incommensurate with the compensation to which the plaintiff was entitled, is now estopped from urging want of testimony excluded by its objection.

By the appellant's computation, to which we will hereafter refer, it appears that the release was a trifle less than 10 per cent of the compensation now shown to be due if the plaintiff was entitled to recover, which brings

the case within the language which this court used in the case of Rocha, *supra*, to wit: ''That the sum of $475.00 is glaringly inadequate as a settlement in this case where a judgment of $8,276.25 is not questioned as being excessive, appears to us an inescapable conclusion and sufficient to shock the conscience of a trial judge.''

In the case of *United Bank & Trust Co.* v. *Hunt*, 1 Cal. (2d) 340 [34 Pac. (2d) 1001], the Supreme Court, in considering the question of the position which an appellant might take when it had blocked the introduction of testimony in the trial court, adopted the language of Presiding Justice Pullen of this court, which we think applicable here, and estops the appellant from urging as a cause for reversal, failure to introduce further testimony which it succeeded in excluding in the trial court. The language referred to is as follows:

''We are ... of the opinion that the bank waived its right to raise the question of *res judicata* in the Yuba County case by its opposition to the motion to amend the Butte County case to include therein the various causes of action set forth in the Yuba County case, and by opposing a motion to try the two cases together. Where counsel, by timely notice, call to a court's attention the pendency of other proceedings covering kindred matters, and strive to have the same embraced within the scope of the inquiry,' and such attempt is successfully blocked by opposing counsel, and the trial proceeds to the investigation of the specific issue before the court, counsel who were successful in preventing the consolidation of the issues cannot be heard later to object to a trial of the related matters upon the ground of *res judicata*. The course pursued by the court and counsel in the Butte County case was tantamount to an express determination on the part of the court with the consent of opposing counsel to reserve the issues involved for future adjudication. (*Ashler* v. *G. F. Stearns etc. Co.*, 241 Ky. 292 [43 S. W. (2d) 1012].) Litigants cannot successfully assume such inconsistent positions.''

Much time and attention has been given by counsel to a number of authorities cited, having to do with the word ''continuous'', referring to the disability of the in-

sured. The testimony in the transcript shows conclusively that the injury suffered by the plaintiff was continuous in its effect upon his system, and was such that he might very properly have discontinued all employment. This, however, is not determinative of this cause. By reference to the insuring clause (A) of the policy it appears that the plaintiff was insured against loss of life, limb, sight or time. He was not insured against injury; he was not insured against bodily pain; he was not insured against disability as disability; he was insured only against loss of time, which means that he was insured against loss of wages by reason of the loss of time during which he would be precluded from engaging in his usual avocation and receiving compensation therefor. The record in this case shows without question that from the 2d day of October, 1933, to the 17th day of November, 1933, the plaintiff was in the employ of the P. F. & E. Company, and received his usual and customary wages. Whether he performed services for that company commensurate with the wages received, is wholly immaterial. The insurance policy issued to the plaintiff insured him, as we have said, only against loss of time, that is, loss of wages which he would otherwise have earned during the period of lost time. Regardless of how serious the disability, if the plaintiff lost no time by reason thereof, the disability alone would furnish no basis upon which to predicate an action against the insurance company. The policy, as we have stated here, was for loss of time only, so far as this case is concerned, and covered nothing else. The record shows that the jury in this case awarded damages in the sum of $839.84, which covered compensation for the time intervening between the date of the accident and the date of the action, covering the period when the plaintiff did not lose time. As we have said, the plaintiff was paid by the company for time lost between September 16, 1933, and November 2, 1933, with the possible exception of one day. From November 2, 1933, to and including November 17, 1933, the plaintiff was on the payroll of the company by which he was employed, and received full pay for that period. This shows that there remained, beginning with November 18, 1933, to and including the time of the commencement of this action on March 10, 1934, the period of three months and twenty-

two days. The policy which we have referred to entitled the plaintiff to payment for loss of time at the rate of $100 per month with an extra $100 for time spent in an hospital. Computation shows that the total of this compensation for the time actually lost by the plaintiff entitled him to receive the sum of $473.33, and no more. ▇ It is urged by the appellant that this shows passion and prejudice on the part of the jury to such an extent that a new trial should be ordered. A careful scrutiny of the record, however, leads us to an opposite conclusion. The complaint in the action was drawn to cover the entire period between September 16, 1933, and March 10, 1934, giving no account of the time which was not lost by the plaintiff, that is, the time when he received his usual compensation, which, of course, went beyond the terms of the policy and did not charge the appellant with liability. We may further state that the record indicates that the plaintiff's cause of action presented to the jury was upon the theory that the appellant was liable simply on account of the injury suffered by the plaintiff, irrespective of whether the plaintiff did or did not lose time and fail to receive wages by reason thereof. This misconception of the insurance policy undoubtedly led the jury into error in awarding the sum not justified by either the policy or the proofs. This error may properly be corrected by the order hereinafter made, without reversal of the cause.

▇ The appellant further objects to language used by the attorney for the plaintiff in his address to the jury, assigning the same as prejudicial. It seems that counsel for the plaintiff in his address to the jury referred to the "poverty" of the plaintiff. Objection thereto was made by counsel for the appellant, and the court used the following language: "That may be stricken out, not considered by the jury, unless there is evidence in there." The criticism on the part of the appellant goes as to the words, "unless there is evidence in there". There being no evidence in the case of the poverty of the plaintiff, we do not very well see how any prejudicial error was caused thereby.

It follows from what we have said that as there is nothing in the record supporting a judgment in favor of the plaintiff for any sum in excess of $473.33, the judgment of the trial

court must stand reversed unless the plaintiff, within twenty days from the rendering of this opinion, file with the clerk of this court a remission of all the damages awarded in excess of the sum of $473.33. In the event such remission is filed, the judgment will stand affirmed for the sum of $473.33.

Costs on appeal are not awarded to either party.

Pullen, P. J., and Thompson, J., concurred.