[Civ. No. 33143. First Dist., Div. One. Oct. 8, 1974.]

BEATRICE COHN, Plaintiff and Appellant, v.
RICHARD D. BUGAS et al., Defendants and Respondents.

## COUNSEL

Lovitt & Hannan and Ronald Lovitt for Plaintiff and Appellant.

Geary, Geary, Shea & Pawson and William E. Geary for Defendants and Respondents.

## OPINION

**SIMS, J.**—Plaintiff sought to recover damages for personal injuries allegedly suffered in an automobile accident, and similar damages, together with punitive damages for alleged fraud in inducing her to release the claim for damages arising out of the accident. She has appealed from an adverse judgment following a requested court trial on the issues of the interpretation of the release, and whether the defendants were guilty of fraud and misrepresentation in procuring the release. She now contends that the court was without jurisdiction to make the order bifurcating the trial because the issue of unconscionably inadequate consideration for the release could not be segregated from the issue of the extent of the damages and liability flowing from the original accident.

It is concluded from an examination of the record that under the circumstances the court properly bifurcated the issues and at no time precluded the plaintiff from showing the inadequacy of the consideration; that plaintiff was bound by her stipulation; and that, in any event, in the absence of findings or any request therefor, plaintiff cannot now attack the judgment of the court.

The salient facts are set forth in an agreed statement, which without quotation marks, reads as follows:

1. This is an appeal from a final judgment pursuant to Code of Civil Procedure, section 904.1.

2. This is a case involving an automobile collision in which appellant claims to have been personally injured as a result of negligence. Before filing suit appellant executed a general release of all claims against the other car owner.

The suit seeks damages for the negligently caused personal injuries and to set aside the general release.

3. During the pre-trial conference held on December 20, 1971, defense counsel suggested that the trial be bifurcated. This suggestion was discussed by defense counsel, plaintiff's counsel and the court, and it was concluded by all three that this procedure would benefit plaintiff in that medical testimony and evidence concerning liability could be tried in the second portion of the bifurcated trial.

4. On December 23, 1971, plaintiff's counsel wrote to the court to express its view that bifurcation was acceptable to plaintiff because: ". . . I basically agree that the issues concerning the alleged release should be disposed of before we incur the judicial time and expense of proving liability, medical causation and the extent of damages . . ."

Subsequently on January 20, 1972, the court issued its pre-trial order, which stated in pertinent part: "FURTHER GENERAL ORDERS: It is further ordered that the trial of this case be bifurcated, and that the issues raised by the Second Cause of Action of the Complaint and by the denial thereof and the affirmative defense pleaded be resolved at the first phase of the trial. The second phase of the trial will be concerned with the issues raised by the first cause of action of the complaint, and by the Answer thereto."

5. At the time of the first phase of the bifurcated trial plaintiff neglected to put on medical proof other than the testimony of the plaintiff stating the circumstances and extent of her alleged injuries.

6. Some weeks after the trial on July 24, 1972, the court rendered its intended decision which denied all relief to plaintiff and stated: "Plaintiff must fail on this theory for the simple and obvious reason: She did not present to the court any medical evidence which would sustain a finding that the ultimate condition for which she received spinal surgery resulted from the accident. No medical evidence was offered to support this proposi-

tion. Accordingly, the court finds that her claim is barred by her release." (Intended Decision Page 4.)

7. Judgment against plaintiff was entered September 7, 1972.

8. Plaintiff filed her motion for a new trial on September 21, 1972, on the grounds that orders of the court prevented plaintiff from having a fair trial.

9. On November 7, 1972, the court issued its order denying plaintiff's motion for a new trial.[1]

# I

■ Section 598 of the Code of Civil Procedure[2] gives the trial court power to order "that the trial of the issue of liability shall precede the trial of any other issue in the case, except for special defenses which may be tried first pursuant to Section 597"[3] on motion of a party in a jury case, and on its own motion in a nonjury case. "Its objective is avoidance of the waste of time and money caused by the unnecessary trial of damage questions in cases where the liability issue is resolved against the plaintiff. (17th Biennial Report, Judical Council (1959) p. 30; 18th Biennial Report (1961) pp. 56-57; 19th Biennial Report (1963) p. 32; see also Committee on Adm. of Justice Report, 36 State Bar J. p. 416 (1961).)" (*Trickey* v. *Superior Court* (1967) 252 Cal.App.2d 650, 653 [60 Cal.Rptr. 761]; see also *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 888 [92 Cal.Rptr. 162, 479 P.2d 362].)

The court, however, over the objection of a party, cannot order the separate trial of an issue of liability when because of the nature of the case it is necessary to prove the plaintiff's damages in order to establish that

[1]A further paragraph incorporates the complaint, answer, pretrial conference order, intended decision, judgment, notice of entry of judgment, notice of intention to move for new trial and points and authorities in support thereof, a declaration of plaintiff's counsel which sets in full his letter of December 23, 1971, referred to in paragraph 4 above, plaintiff's supplementary points and authorities on motion for new trial, the order denying the motion for new trial, and the notice of appeal.

[2]Section 598 provides in pertinent part, "In a trial by jury, the court may, when the convenience of witnesses or the ends of justice would be promoted thereby, on motion of a party, after notice and hearing, make an order, . . . that the trial of the issue of liability shall precede the trial of any other issue in the case, except for special defenses which may be tried first pursuant to Section 597. In a nonjury trial, the court may on its own motion make such order at any time. . . ."

[3]Section 597 refers to special defenses in part as follows: "When the answer . . . sets up any other defense not involving the merits of the plaintiff's cause of action but constituting a bar . . . to the prosecution thereof, the court may, upon the motion of either party, proceed to the trial of such special defense . . . before the trial of any other issue in the case, . . ."

liability. In *Cook* v. *Superior Court* (1971) 19 Cal.App.3d 832 [97 Cal. Rptr. 189], the plaintiff sought to recover damages from his former attorney for negligent prosecution of a claim for damages for medical malpractice. The trial court, on motion of the attorney, ordered that the issues relating to the alleged medical malpractice be tried first. On application of the plaintiff a writ of prohibition was issued by the Court of Appeal. It ruled, "In an action by a client against his attorney to establish liability for malpractice in the prosecution of a case, the client must show the attorney was negligent in prosecuting the case and, but for such negligence, the case would have resulted in the recovery and collection of a judgment favorable to the client. (*Campbell* v. *Magana,* 184 Cal.App.2d 751 [8 Cal.Rptr. 32].) Thus the issue of liability includes not only a showing the attorney was negligent but also a showing his negligence caused damage. Factors of damage essential to proof of the issue of liability against the attorney would also be factors essential to proof on the issue of damages. Thus, where trial of the question of liability is bifurcated by requiring a trial of the issues of legal malpractice the court, in substance, is directing a trial of some of the issues on the question of damage before a trial on some of the issues on the question of liability. [¶] The authority of the court to bifurcate a trial of the issues in a case is conferred and limited by the provisions of Code of Civil Procedure section 598. The statute does not authorize the court to order the trial of a part of the issue of liability and a part of the issue of damages before the trial of another part of the issue of liability. . . . [¶] An act which exceeds the defined statutory power of a court is in excess of its jurisdiction and may be restrained by a writ of prohibition." (*Cook* v. *Superior Court* (1971) 19 Cal.App.3d 833, 834 [97 Cal.Rptr. 189, 190].) (See also *Abelleira* v. *District Court of Appeal* (1941) 17 Cal. 2d 280, 287 [109 P.2d 942, 132 A.L.R. 715]; and *Rodman* v. *Superior Court* (1939) 13 Cal.2d 262, 269-270 [89 P.2d 109].)

So here plaintiff now contends that the issues raised by the allegations of the second cause of action in her complaint and the defendants' denial thereof, and by the defendants' affirmative defense were so intertwined with the issues relating to the liability and damages alleged in her first cause of action, that the court had no jurisdiction to order them severed. An examination of the record fails to establish the interrelationship of issues found in *Cook* v. *Superior Court.*

The second cause of action alleges that plaintiff, who allegedly suffered $300,000 general damages from injuries to the neck and other undiagnosed injuries, executed a release of the defendant insurer, which insured the driver and owner of the vehicle involved, upon the following false representations of its agent: ". . . that plaintiff's medical expenses arising from

said accident would be paid by plaintiff's health insurance carrier and by the insurance carrier of the owner of the automobile in which plaintiff was a passenger, that plaintiff was not entitled to any compensation from the defendant insurance company for her loss of earnings and income during the time when plaintiff would not be able to carry on her business because of her injuries from said accident and the release that defendant agents wanted plaintiff to sign concerned only the plaintiff's injured finger caused by said accident."

The foregoing allegations were denied, and the defendants alleged, as an affirmative defense, ". . . that plaintiff settled her claim against the defendants [owners] by and through a representative of said defendants; that said settlement was fairly made and concluded by and between said parties and that by reason thereof, said plaintiff released all of her said claim against defendants herein and each of them."

The letter dated December 23, 1971, from plaintiff's attorney to the court, as incorporated in his declaration in support of the motion for new trial, not only contains the statement incorporated in paragraph 4 of the agreed statement, but expressly requested bifurcation in the following language: ". . . I basically agree that the issues concerning the alleged release should be disposed of before we incur the judicial time and expense of proving liability, medical causation and the extent of damages. . . ."[4]

The intended decision of the court, not only contains the paragraphs set

---

[4]The body of the letter reads as follows: "I am writing to express my views to the court on bifurcating this trial as was suggested at the pre-trial conference.

"As I related to the court at the pre-trial conference, I basically agree that the issues concerning the alleged release should be disposed of before we incur the judicial time and expense of proving liability, medical causation and the extent of damages before the jury. As I understand the present posture, the court is prepared to order that there be two jury trials, the first one to determine the release issues.

"The potential of two jury trials is bothersome. Frankly, I am concerned about the expense and time required for two jury trials. Moreover, I have some questions relating to the possible impact of res judicata and collateral estoppel, and whether the same jury should hear both trials and whether medical testimony would be required at the first trial in order to prove plaintiff's claimed fraud damages, etc. Plaintiff would certainly want the second trial heard by the same jury and would not want to have to put on its medical evidence twice.

"Accordingly, I submit and suggest that at the first trial, the court sit without a jury to decide the threshold issues: (1) the interpretation of release and (2) whether defendant(s) are guilty of fraud or misrepresentation in procuring the release.

"This proposal makes sense to me because it would save time and expense for everybody and this is the apparent reason for bifurcating. Moreover, these questions seem particularly susceptible to a judge's determination and in far less time. Perhaps the court could assign us an earlier trial date for a one-day court trial so that both plaintiff and defendants would know where they stand on the release issues before investing further in their trial preparation.

"I haven't discussed this with defense counsel because I recall from the pre-trial

forth in paragraph 6 of the agreed statement, but also a thorough review of the pleadings, the procedural steps leading to the court trial on the issue of the validity of the release, and the evidence introduced at that hearing.[5] The court pointed out that the question of the adequacy of the consideration for the release had not been specifically raised by the pleadings, but, nevertheless, in a paragraph preceding the statement quoted in the agreed statement it reviewed the evidence on that issue.[6] Finally the court adverted to

that he will be out for several days. I am confident that he will see the merit in this proposal; however, I would expect to hear from him if he finds the prospect of a court trial objectionable."

[5]On the merits of the issue of misrepresentation the court concluded as follows: "Plaintiff has not met her burden of proof and judgment must be entered in favor of the defendants. Plaintiff has not satisfied the court that any misrepresentations were in fact made to her. It is abundantly clear that defendant Schuetze dealt with the plaintiff openly and honestly in adjusting her claim. It was plaintiff, upon advice from her foster daughter, who suggested the gross settlement figure which defendant 3-A paid her. She received to the very penny the amount which she demanded. When advised that her then medical expense would be paid by collateral sources, Schuetze advised her that it was perfectly legal and ethical to again include her medical expense in her claim against 3-A.

"Schuetze testified that her 'earnings' from her dog grooming and kennel business were never discussed, and plaintiff testified that the small business which she did conduct from her home had resulted in a substantial business loss from its very inception. In view of these circumstances, it appears most improbable that the fact of 'plaintiff being in business' was ever discussed.

"Finally, with regard to the specific misrepresentations pleaded, plaintiff candidly admits that she was told and knew that the release was final and in complete settlement of any and all of her claims."

[6]This part of the intended decision reads: "Although the issue was not specifically raised by any of the pleadings, plaintiff now contends that the court should set aside the release on the theory that the court should do so when the amount paid in settlement is so low as to shock the conscience of the trial judge. *Weger* v. *Rocha,* 138 C.A. 109; and *O'Meara* v. *Haiden,* 204 C. 354. In a proper case, the court recognizes its power to invalidate a release on this ground. However, it is clearly the responsibility of plaintiff to fully prove the nature and extent of her injuries and that they were proximately caused by the defendants' negligence. Without objection from defendants, plaintiff testified to a series of events which developed after the release was signed which eventually required a myelogram followed by anterior cervical fusion. It seems clear that plaintiff sustained a cervical sprain as a consequence of the accident, in addition to refracturing the distal interphalangeal joint of the right ring finger. It is very clear that both plaintiff and her treating doctors (one an orthopedic surgeon) regarded the finger injury as more severe than the cervical sprain. She saw the orthopedist to whom she had been referred only twice for treatment of the cervical injury. The last complaint from plaintiff about her neck and back was made to and noted by defendant Schuetze in his notes on September 1, 1970. He testified and the court believes that plaintiff made no complaint to him about her neck or back on December 9, 1970, when the claim was finally settled. Plaintiff testified that she began to suffer dizzy spells shortly before she signed the release, although her day book, in which she was prone to record such information, contains no entries relating to her dizzy spells. In January, she testified, the dizzy spells continued and she fell twice thereafter when unable to maintain her balance. She consulted a neurosurgeon, who

the right of either party to request findings and directed the defendant to prepare a judgment if none were requested. (See Code Civ. Proc., § 632, and Cal. Rules of Court, rule 232.)

"It has long been held that special defenses which abate or bar the claim of the plaintiff may be tried before other issues, for a decision in the defendant's favor may render unnecessary the effort and expense of a complete trial." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 124, p. 2949.) (See also Code Civ. Proc., § 597 [fn. 3, above]; *Silver* v. *Shemanski* (1949) 89 Cal.App.2d 520, 530-531 [201 P.2d 418]; *Kreling* v. *Walsh* (1947) 77 Cal.App.2d 821, 835-836 [176 P.2d 965]; *Donovan* v. *Security-Trust Nat. Bk.* (1945) 67 Cal.App.2d 845, 852 [155 P.2d 856]; and *Booth* v. *Bond* (1942) 56 Cal.App.2d 153, 156-157 [132 P.2d 520].)[7]

An examination of the pleadings in this case indicates that the issues to be tried, according to the request of plaintiff's counsel and the order of the

---

placed her in Presbyterian Hospital on February 22nd for a myelogram. Conservative treatment followed without appreciable success, and on June 3rd the fusion was successfully performed."

[7]In *Cook* v. *Superior Court* (1971) 19 Cal.App.3d 832 [97 Cal.Rptr. 189], upon which plaintiff relies, the court suggested that two of the cases cited herein were impliedly overruled by statutory changes. The court stated, "In *Booth* v. *Bond*, 56 Cal. App.2d 153, 155-157. . . and *Donovan* v. *Security-First Nat. Bk.*, 67 Cal.App.2d 845, 852 . . . it was stated a court has inherent power to bifurcate the trial of issues. However, in each of these cases, the provisions of former Code of Civil Procedure section 2042 were relied upon as authority for this statement. At the time of the decision in each case section 2042 provided: 'The order of proof must be regulated by the sound discretion of the court.' Since that time section 2042 has been supplanted by Evidence Code section 320, which states:'*Except as otherwise provided by law,* the court in its discretion shall regulate the order of proof.' (Italics ours.) Thus, the authority of the court to regulate the order of proof in its discretion is limited by section 598 which provides the authority to regulate the order of proof as it relates to the trial of the issues in a case." (19 Cal.App.3d at p. 834.)

The earlier cases reconciled the provisions of sections 597, 598 and former section 2042 of the Code of Civil Procedure so as to give the trial court wide discretion. The conclusion that a mere rephrasing of the language was an attempt to change existing law rests on questionable grounds. The Law Revision Commission commented, "Section 320 restates the substance of and supersedes the first sentence of Section 2042 of the Code of Civil Procedure. Under Section 320, as under existing law, the trial judge has wide discretion to determine the order of proof." (See 1 Deering's Evid. Code Ann., p. 345.) No intent to change the law is indicated. The result in *Cook* v. *Superior Court* appears proper, because under the particular circumstances of that case the trial court may have abused its discretion in ordering bifurcation over the objection of one of the parties. In this sense there was a lack of "jurisdiction," but the conclusion that there was not otherwise "jurisdiction" in the sense of power to hear the case in the absence of objection is of equally questionable nature. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 287-291 [109 P.2d 942, 132 A.L.R. 715]; and cf. *Meyer Koulish Co.* v. *Cannon* (1963) 213 Cal.App.2d 419, 429-430 [28 Cal.Rptr. 757].)

court, more properly related to a "defense not involving the merits of the plaintiff's cause of action . . . constituting a bar . . . to the prosecution thereof." (See. § 597). The fact that the plaintiff sought to recover punitive damages for alleged fraud in obtaining a release in her second cause of action, did not deprive the defendants of their defense of a release of the cause of action asserted in plaintiff's first cause of action; nor should it deprive the defendant of the right to have that issue determined, when, as here, the plaintiff not only consents but joins in the request for bifurcation.

In support of plaintiff's motion for a new trial, her attorney explained his failure to ". . . present to the court any medical evidence which would sustain a finding that the ultimate condition for which she received spinal surgery resulted from the accident," as commented on by the court in its intended decision as follows: "At the first phase of the bifurcated trial I put on proof relating to issues raised by the release. However, I did not introduce evidence to prove medical causation since I sincerely believed that for purposes of the issues raised by the release, medical causation would be presumed." He argued that plaintiff's consent to the court's order "was given as a result of counsel's mistaken belief that if the trial was bifurcated there would be no need for medical evidence." He added, "Moreover the court's order confused counsel in the presentation of plaintiff's case to the extent that counsel purposely did not submit medical evidence." He also stated, ". . . plaintiff was induced by the pre-trial judge to give up an important procedural right in consenting to a bifurcated trial in order to avoid expensive medical testimony; . . ." Although the former statement may be correct, there is absolutely no warrant for attributing counsel's belief, whether correct or mistaken, to the court. Nor, in the absence of any offer of proof can the court be blamed for plaintiff's failure to present evidence of causation.

"An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration." (Civ. Code, §1541.) (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 701, p. 589; *Moore* v. *Rogers* (1958) 157 Cal.App.2d 192, 196 [320 P.2d 524]; *Silver* v. *Shemanski, supra,* 89 Cal. App.2d 520, 531-532; *Donovan* v. *Security-Trust Nat. Bk., supra,* 67 Cal. App.2d 845, 852-853; and *Booth* v. *Bond, supra,* 56 Cal.App.2d 153, 157.) "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." (Civ. Code, § 1542.) (See *O'Meara* v. *Haiden* (1928) 204 Cal. 354, 357-361 [268 P. 334, 60 A.L.R. 1381]; and *Chung* v. *Johnston* (1954) 128 Cal.App.2d 157, 163 [274 P.2d 922].) It is apparent from the

intended decision of the court that plaintiff could not avoid the release under the latter section. (See fn. 6, above.) ■ "If the injury is known at the time of the settlement, the release is binding upon the parties, even if unknown or unexpected consequences result therefrom, but if the injury is unknown, and the parties purport to settle for all injuries sustained, then the release will not be held to be binding upon the parties as to the injury which was unknown to the parties at the time of executing the release." (*O'Meara* v. *Haiden* (1928) 204 Cal. 354, 360 [268 P. 334, 60 A.L.R. 1381].) ■ Here the cervical sprain sustained as a consequence of the accident was known at the time the release was executed. Further proof that the fusion, almost a year after the accident and six months after the release was executed, was a proximate result of the accident would not have been effective to avoid the release under section 1542.

The court resolved the issue of the alleged fraudulent misrepresentations raised by plaintiff's second cause of action. (See fn. 5, above.) Nevertheless plaintiff insists that the denial implied by law of any new matter in the answer (Code Civ. Proc., § 431.20) raised an issue of the adequacy of the consideration, because the defendant alleged "that said settlement was fairly made and concluded." The rule on which plaintiff relies is set forth in *Weger* v. *Rocha* (1934) 138 Cal.App. 109 [32 P.2d 417], as follows: "While inadequacy of the money agreed to be paid, standing alone, is not a sufficient badge of fraud upon which to base a verdict, unless the amount is in itself so insufficient as to shock the conscience of the court, it may nevertheless be taken into consideration with all the circumstances attendant upon and surrounding the transaction." (138 Cal.App. at p. 115. See also *Moore* v. *Rogers, supra,* 157 Cal.App.2d 192, 196; and cf. *Donovan* v. *Security-Trust Nat. Bk., supra,* 67 Cal.App.2d 845, 853; and *Booth* v. *Bond, supra,* 56 Cal.App.2d 153, 157.)

The plaintiff by admitting the execution of the release established a prima facie case for the defendants. The burden of proof, in both the sense of producing evidence (see Evid. Code, § 604) and in the sense of the burden of persuasion (see *id.* § 605) to prove fraud, either by reason of the alleged misrepresentations or unconscionable inadequacy of the consideration or both, was on the plaintiff. (*Donovan* v. *Security-Trust Nat. Bk., supra,* 67 Cal.App.2d 845, 853. See also Civ. Code, §§ 1615 and 3545.) In the case upon which plaintiff relies, the court sustained a finding that a release of injuries resulting in damage of over $8,000 for $475 was void as secured by fraud, duress, menace and undue influence, on evidence summarized as follows: "Here we have a working woman employed in a woolen mill, confined in a cast flat on her back, in a highly nervous and hysterical condition, suffering much pain, worried by her hospital and

doctor's bills, importuned and importuned by the agent of the company offering a settlement amounting to a trifle more than one-half of the expenses just referred to, making no mention of not taking into consideration any compensation for the personal injuries suffered by the plaintiff." (*Weger* v. *Rocha* (1934) *supra,* 138 Cal.App. at p. 115.)

In this case the court found no such overreaching. (See fns. 5 and 6, above.) The record fails to reveal that the plaintiff ever offered any proof as to the pecuniary extent of her damages. She cannot now complain that this defect was occasioned by action of the court or of her adversary. (See *Moore* v. *Rogers, supra,* 157 Cal.App.2d 192, 197.) From all that appears if plaintiff had advanced the contention now made on appeal at the trial of the limited issues, the trial court would have either entertained the proof, or entertained a motion to set aside the order for the bifurcated trial. In the absence of proper objection or offer of proof at the trial level there was no "jurisdictional" bar, as in *Cook* v. *Superior Court, supra,* to proceeding on the issues set forth in the trial court's order.

## II

■ The general rules concerning a stipulation made by counsel are set forth in *Bemer* v. *Bemer* (1957) 152 Cal.App.2d 766 [314 P.2d 114] as follows: "There can be no doubt that an attorney can bind his client in any step in an action by his agreement entered upon the minutes of the court. [Citations.] A stipulation may lawfully include or limit issues or defenses to be tried, whether or not such issues or defenses are pleaded. [Citations.] [¶] ■ It is up to the parties to state a stipulation clearly and properly if they intend to be bound by it, and a party will not be heard to complain if later it is determined that by his own carelessness in the choice of words he did not state what he now says he really meant to say." (152 Cal.App.2d at pp. 771-772. See, e.g., *Williams* v. *General Insurance Co.* (1936) 8 Cal.2d 1, 4 [63 P.2d 289].)

If plaintiff, as she now contends, entered into the requested hearing inadvertently her remedy was to apply for relief in the trial court. (See *Troxell* v. *Troxell* (1965) 237 Cal.App.2d 147, 151 [46 Cal.Rptr. 723]; and *L. A. City Sch. Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744, 750 [2 Cal.Rptr. 662].) Insofar as she did so by her motion for new trial, there was no error in denying that motion. She failed to show such inadvertence, excusable neglect, fraud, mistake of fact or law as would render the denial of relief an abuse of discretion as a matter of law.

Her contention that the parties cannot confer jurisdiction by stipulation (see *Cook* v. *Winklepleck* (1936) 16 Cal.App.2d Supp. 759, 769 [59 P.2d

463]) fails, because as has been demonstrated above (part I) the court, in the absence of any objection, had power to determine the issues presented to it on such evidence as was adduced by the parties.

### III

Despite the court's invitation to do so, no findings were requested by either party, and they are therefore deemed to have been waived. (Code Civ. Prov., § 632; Cal. Rules of Court, rule 232; *Elzey* v. *Metropolitan Builders, Inc.* (1971) 16 Cal.App.3d 71, 73 [92 Cal.Rptr. 461].) In *Estate of Rule* (1944) 25 Cal.2d 1 [152 P.2d 1003, 155 A.L.R. 1319] [disapproved on another issue *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 866, fn. 2 (44 Cal.Rptr. 767, 402 P.2d 839)], the court declared: ". . . in the absence of findings of fact and conclusions of law, every intendment is in favor of the judgment or order appealed from and it is presumed that every fact or inference essential to the support of the order and warranted by the evidence was found by the court. [Citations.]" (25 Cal.2d at p. 10.) (See also *Reid* v. *Valley Restaurants, Inc.* (1957) 48 Cal.2d 606, 609 [311 P.2d 473]; and *Block* v. *Laboratory Procedures, Inc.* (1970) 8 Cal.App.3d 1042, 1045 [87 Cal.Rptr. 778].)

The record before this court fails to show any error which would nullify the implied findings of the trial court that the plaintiff failed to establish the allegations of fraud contained in her second cause of action, and that the defendants established the validity of the release set forth in their affirmative defense.

The judgment is affirmed.

Molinari, P. J., and Brown (H. C.), J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.