[No. 13205.   Department Two. — November 9, 1889.]

## HELEN M. MOORE, RESPONDENT, v. FREDERICK W. MOORE ET AL., APPELLANTS.

CANCELLATION OF DEEDS — MENTAL PROSTRATION — UNDUE INFLUENCE. — The evidence in this case held sufficient to sustain the findings and judgment canceling two deeds and a bill of sale made by the plaintiff without consideration, on the grounds of mental incapacity and undue influence.

APPEAL from a judgment of the Superior Court of Santa Cruz County.

The facts are stated in the opinion of the court.

*Olney, Chickering & Thomas,* and *Hall & Rogers,* for Appellants.

*Charles B. Younger,* for Respondent.

McFARLAND. — This action was brought to cancel two deeds and a bill of sale made by plaintiff, on the ground of mental impairment, undue influence, etc., at the time of their execution. The findings and judgment were in favor of plaintiff, and defendants appeal from the judgment.

Some exceptions were taken to rulings of the court about the admissibility of certain evidence, but these exceptions were afterward withdrawn. The plea of the statute of limitations was practically disposed of when the case was here before on a demurrer to the complaint. (*Moore* v. *Moore,* 56 Cal. 89.) The complaint set up all the facts upon which the plea of the statute could be based, and this court held that the plea was not good; and as the court found those facts upon sufficient evidence in favor of respondent, we must hold that the defense of the statute of limitations has not been maintained.

There is, therefore, only one question — argued elaborately by appellants — to be disposed of, and that is,

Does the evidence justify the findings and judgment on the real merits of the case?

The *undisputed* facts in the case are so strongly in favor of respondent that the evidence on the disputed facts would have to be very strong in favor of appellants, indeed, to warrant this court in overturning the judgment of the court below. These undisputed facts are as follows: Respondent was married to William H. Moore (now deceased) in the summer of 1871. They resided on a farm of deceased called "the Moore Ranch," situated a short distance from the town of Santa Cruz. At the time of their marriage the deceased was a widower, and had four minor children, — two boys, Frederick W. and Charles, and two girls, Alice and Stella, who are defendants and appellants herein. Respondent and the deceased lived very happily together, and he was a kind and affectionate husband. She had been a school-teacher, and had no blood relations in that part of the country, and had only a slight acquaintance with any of the adult relatives of deceased. Down to the moment of his death, deceased was a man of strong constitution and robust health. He almost daily visited the town of Santa Cruz, and respondent always looked for his return with pleasure. On the thirtieth day of October, 1871, he went to Santa Cruz, intending to return the same day, as usual. On the afternoon of that day he was shot and instantly killed, and his dead body was immediately brought home to respondent.

There is no real attempt to dispute the fact that respondent was deeply shocked and agitated by this sudden and startling calamity (although, as might well be expected, there is some conflicting testimony as to the extent of her mental prostration). On the day after the death of deceased, the appellant, Thomas W. Moore, a brother of deceased, visited respondent at her home, and professed great sympathy and solicitude for her in her distress. The body of the deceased was buried on No-

vember 1, 1871, and on the afternoon of that day the said Thomas W. Moore and his brother-in-law, J. N. Besse, visited an attorney at his office in Santa Cruz, and the said Moore then and there advised with the said attorney as to how he could secure all the property of the deceased for his children by the former marriage. The next day after the funeral, or the second day,—that is, the 2d or 3d of November,—the said Thomas W. Moore, accompanied by a brother and two brothers-in-law, and the said attorney, visited respondent, and advised with her about the execution of the written instruments which are the subject of this action. At that time respondent was pregnant with a child begotten by said deceased (which was afterward born and is still living), and this fact was known to all of said visiting parties. Respondent did not then know that said attorney had been employed by said Thomas W. for the purpose aforesaid. Respondent had no independent adviser, and no adviser at all, except said parties, who were all interested in securing all the property of deceased for his said children. Under these circumstances, respondent executed the two deeds, and the bill of sale set forth in the complaint, by which she conveyed and transferred to the said children without consideration all and every part of her right and interest — being one third — in every dollar's worth of her deceased husband's estate, real and personal. The property was worth at that time $47,000. These facts are undisputed.

The disputed facts — all found by the court in favor of respondent — are mainly about the extent of respondent's prostration, and her ability to know what she was doing and to act intelligently for herself. Her evidence was to the effect that she was shocked and terrified by the sudden death of her husband and the manner of it, — the effect being deepened from her condition of pregnancy; that for two successive days and nights she watched and moaned by the side of the dead body with-

out sleep or nourishment; that for many days her mind was stupefied and disordered so that she did not know what was right and proper to be done about her affairs; and that she did not read the said documents signed by her, and did not understand their purport or effect. Appellants, on the other hand, introduced testimony tending to show that her mental condition was not as bad as claimed by her, and that she was informed of and knew the character of the instruments signed by her, and that she signed them voluntarily. There was, also, some conflicting testimony about a certain will. The deceased had made a will before his marriage with respondent, giving all his property to his said children, and respondent testified that she did not know that the subsequent marriage annulled the will, while appellants contend that she was informed and knew of that fact. There is also some conflict as to what was said about the effect which the proposed instruments would have on the interests of the expected child of respondent,—although we do not see in the evidence any pretense of information to her that the instruments would convey away from the expected child all right to respondent's one third of the estate. There was also a conflict of evidence about the purpose of a certain bond, given in relation to a certain life insurance policy. These were about all the material matters about which there are conflicts of evidence.

Considering all the undisputed facts, and particularly the unusual haste with which and the extraordinary circumstances under which the respondent was induced to forever give away such large and valuable property rights, we see no good reason to disturb the conclusions at which the lower court arrived.

The judgment is affirmed.

SHARPSTEIN, J., and THORNTON, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissenting. — I think that the evidence in this case is wholly insufficient to sustain the findings of the superior court as to the defense of the statute of limitations, and therefore I dissent from the order denying a rehearing in Bank.