[Civ. No. 29510. Second Dist., Div. Two. Nov. 3, 1966.]

DONALD W. ODORIZZI, Plaintiff and Appellant, v. BLOOMFIELD SCHOOL DISTRICT, Defendant and Respondent.

Burton Marks, Green, Simke & Lasher and Stuart A. Simke for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and Raymond W. Schneider, Deputy County Counsel, for Defendant and Respondent.

FLEMING, J.—Appeal from a judgment dismissing plaintiff's amended complaint on demurrer.

Plaintiff Donald Odorizzi was employed during 1964 as an elementary school teacher by defendant Bloomfield School District and was under contract with the district to continue to teach school the following year as a permanent employee. On June 10 he was arrested on criminal charges of homosexual activity, and on June 11 he signed and delivered to his superiors his written resignation as a teacher, a resignation which the district accepted on June 13. In July the criminal

charges against Odorizzi were dismissed under Penal Code, section 995, and in September he sought to resume his employment with the district. On the district's refusal to reinstate him he filed suit for declaratory and other relief.

Odorizzi's amended complaint asserts his resignation was invalid because obtained through duress, fraud, mistake, and undue influence and given at a time when he lacked capacity to make a valid contract. Specifically, Odorizzi declares he was under such severe mental and emotional strain at the time he signed his resignation, having just completed the process of arrest, questioning by the police, booking, and release on bail, and having gone for 40 hours without sleep, that he was incapable of rational thought or action. While he was in this condition and unable to think clearly, the superintendent of the district and the principal of his school came to his apartment. They said they were trying to help him and had his best interests at heart, that he should take their advice and immediately resign his position with the district, that there was no time to consult an attorney, that if he did not resign immediately the district would suspend and dismiss him from his position and publicize the proceedings, his "aforedescribed arrest" and cause him "to suffer extreme embarrassment and humiliation"; but that if he resigned at once the incident would not be publicized and would not jeopardize his chances of securing employment as a teacher elsewhere. Odorizzi pleads that because of his faith and confidence in their representations they were able to substitute their will and judgment in place of his own and thus obtain his signature to his purported resignation. A demurrer to his amended complaint was sustained without leave to amend.

By his complaint plaintiff in effect seeks to rescind his resignation pursuant to Civil Code, section 1689, on the ground that his consent had not been real or free within the meaning of Civil Code, section 1567, but had been obtained through duress, menace, fraud, undue influence, or mistake. A pleading under these sections is sufficient if, stripped of its conclusions, it sets forth sufficient facts to justify legal relief. (*Gogerty* v. *Coachella Valley Junior College Dist.*, 57 Cal.2d 727, 731 [21 Cal.Rptr. 806, 371 P.2d 582] ; *Krug* v. *Meeham*, 109 Cal.App.2d 274, 277 [240 P.2d 732].) In our view the facts in the amended complaint are insufficient to state a cause of action for duress, menace, fraud, or mistake, but they do set out sufficient elements to justify rescission of a consent

because of undue influence. We summarize our conclusions on each of these points.

1. No duress or menace has been pleaded. ■ Duress consists in unlawful confinement of another's person, or relatives, or property, which causes him to consent to a transaction through fear. (Civ. Code, § 1569.) ■ Duress is often used interchangeably with menace (*Leeper* v. *Beltrami*, 53 Cal.2d 195, 203 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]), but in California menace is technically a threat of duress or a threat of injury to the person, property, or character of another. (Civ. Code, § 1570; Rest., Contracts, §§ 492, 493.) ■ We agree with respondent's contention that neither duress nor menace was involved in this case, because the action or threat in duress or menace must be unlawful, and a threat to take legal action is not unlawful unless the party making the threat knows the falsity of his claim. (*Leeper* v. *Beltrami*, 53 Cal.2d 195, 204 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803].) The amended complaint shows in substance that the school representatives announced their intention to initiate suspension and dismissal proceedings under Education Code, sections 13403, 13408 et seq. at a time when the filing of such proceedings was not only their legal right but their positive duty as school officials. (Ed. Code, § 13409; *Board of Education* v. *Weiland*, 179 Cal.App.2d 808 [4 Cal.Rptr. 286].) Although the filing of such proceedings might be extremely damaging to plaintiff's reputation, the injury would remain incidental so long as the school officials acted in good faith in the performance of their duties. (*Schumm* v. *Berg*, 37 Cal.2d 174, 185-186 [231 P.2d 39, 21 A.L.R.2d 1051].) Neither duress nor menace was present as a ground for rescission.

■ 2. Nor do we find a cause of action for fraud, either actual or constructive. (Civ. Code, §§ 1571 to 1574.) ■ Actual fraud involves conscious misrepresentation, or concealment, or non-disclosure of a material fact which induces the innocent party to enter the contract. (Civ. Code, § 1572; *Pearson* v. *Norton*, 230 Cal.App.2d 1, 7 [40 Cal. Rptr. 634]; Rest., Contracts, § 471.) ■ A complaint for fraud must plead misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage. (*Sixta* v. *Ochsner*, 187 Cal.App.2d 485, 489 [9 Cal. Rptr. 617]; *Zinn* v. *Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68 [306 P.2d 1017].) ■ While the amended complaint charged misrepresentation, it failed to assert the elements of knowledge of falsity, intent to induce reliance, and justifiable

reliance. A cause of action for actual fraud was therefore not stated. (*Norkin* v. *United States Fire Ins.*, 237 Cal.App.2d 435 [47 Cal.Rptr. 15].)

 Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice. (Civ. Code, § 1573.) Plaintiff has attempted to bring himself within this category, for the amended complaint asserts the existence of a confidential relationship between the school superintendent and principal as agents of the defendant, and the plaintiff. Such a confidential relationship may exist whenever a person with justification places trust and confidence in the integrity and fidelity of another. (*Vai* v. *Bank of America*, 56 Cal.2d 329, 338 [15 Cal.Rptr. 71, 364 P.2d 247]; *Pryor* v. *Bistline*, 215 Cal.App.2d 437, 446 [30 Cal.Rptr. 376].) Plaintiff, however, sets forth no facts to support his conclusion of a confidential relationship between the representatives of the school district and himself, other than that the parties bore the relationship of employer and employee to each other. Under prevailing judicial opinion no presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee; rather, additional ties must be brought out in order to create the presumption of a confidential relationship between the two. (Annot., 100 A.L.R. 875.) The absence of a confidential relationship between employer and employee is especially apparent where, as here, the parties were negotiating to bring about a termination of their relationship. In such a situation each party is expected to look after his own interests, and a lack of confidentiality is implicit in the subject matter of their dealings. We think the allegations of constructive fraud were inadequate.

 3. As to mistake, the amended complaint fails to disclose any facts which would suggest that consent had been obtained through a mistake of fact or of law. The material facts of the transaction were known to both parties. Neither party was laboring under any misapprehension of law of which the other took advantage. The discussion between plaintiff and the school district representatives principally attempted to evaluate the probable consequences of plaintiff's predicament and to predict the future course of events. The fact that their speculations did not forecast the exact pattern which events subsequently took does not provide the basis for

a claim that they were acting under some sort of mistake. The doctrine of mistake customarily involves such errors as the nature of the transaction, the identity of the parties, the identity of the things to which the contract relates, or the occurrence of collateral happenings. (Rest., Contracts, § 502, com. e.) Errors of this nature were not present in the case at bench.

4. However, the pleading does set out a claim that plaintiff's consent to the transaction had been obtained through the use of undue influence.

Undue influence, in the sense we are concerned with here, is a shorthand legal phrase used to describe persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment. (*Estate of Ricks*, 160 Cal. 467, 480-482 [117 P. 539].) The hallmark of such persuasion is high pressure, a pressure which works on mental, moral, or emotional weakness to such an extent that it approaches the boundaries of coercion. In this sense, undue influence has been called overpersuasion. (*Kelly v. McCarthy*, 6 Cal.2d 347, 364 [57 P.2d 118].) Misrepresentations of law or fact are not essential to the charge, for a person's will may be overborne without misrepresentation. By statutory definition undue influence includes ''taking an unfair advantage of another's weakness of mind, or . . . taking a grossly oppressive and unfair advantage of another's necessities or distress.'' (Civ. Code, § 1575.) While most reported cases of undue influence involve persons who bear a confidential relationship to one another, a confidential or authoritative relationship between the parties need not be present when the undue influence involves unfair advantage taken of another's weakness or distress. (*Wells Fargo Bank v. Brady*, 116 Cal.App.2d 381, 398 [254 P.2d 71] ; *Buchmayer v. Buchmayer*, 68 Cal.App.2d 462, 467 [157 P.2d 9].)

We paraphrase the summary of undue influence given the jury by Sir James P. Wilde in *Hall v. Hall*, L.R. 1, P. & D. 481, 482 (1868) : To make a good contract a man must be a free agent. Pressure of whatever sort which overpowers the will without convincing the judgment is a species of restraint under which no valid contract can be made. Importunity or threats, if carried to the degree in which the free play of a man's will is overborne, constitute undue influence, although no force is used or threatened. A party may be led but not driven, and his acts must be the offspring of his own volition and not the record of someone else's.

▇▇ In essence undue influence involves the use of excessive pressure to persuade one vulnerable to such pressure, pressure applied by a dominant subject to a servient object. In combination, the elements of undue susceptibility in the servient person and excessive pressure by the dominating person make the latter's influence undue, for it results in the apparent will of the servient person being in fact the will of the dominant person.

▇▇ Undue susceptibility may consist of total weakness of mind which leaves a person entirely without understanding (Civ. Code, § 38); or, a lesser weakness which destroys the capacity of a person to make a contract even though he is not totally incapacitated (Civ. Code, § 39; *Peterson* v. *Ellebrecht,* 205 Cal.App.2d 718, 721-722 [23 Cal.Rptr. 349]); or, the first element in our equation, a still lesser weakness which provides sufficient grounds to rescind a contract for undue influence (Civ. Code, § 1575; *Faulkner* v. *Beatty,* 161 Cal.App.2d 547, 551 [327 P.2d 41]; *Stewart* v. *Marvin,* 139 Cal.App.2d 769, 775 [294 P.2d 114]). Such lesser weakness need not be long-lasting nor wholly incapacitating, but may be merely a lack of full vigor due to age (*Wells Fargo Bank* v. *Brady,* 116 Cal. App.2d 381, 397-398 [254 P.2d 71]), physical condition (*Weger* v. *Rocha,* 138 Cal.App. 109, 114-115 [32 P.2d 417]), emotional anguish (*Moore* v. *Moore,* 56 Cal. 89, 93; 81 Cal. 195, 197-198 [22 P. 589, 874]), or a combination of such factors. The reported cases have usually involved elderly, sick, senile persons alleged to have executed wills or deeds under pressure. (*Malone* v. *Malone,* 155 Cal.App.2d 161 [317 P.2d 65] [constant importuning of a senile husband]; *Stewart* v. *Marvin,* 139 Cal.App.2d 769 [294 P.2d 114] [persistent nagging of elderly spouse].) In some of its aspects this lesser weakness could perhaps be called weakness of spirit. But whatever name we give it, this first element of undue influence resolves itself into a lessened capacity of the object to make a free contract.

▇▇ In the present case plaintiff has pleaded that such weakness at the time he signed his resignation prevented him from freely and competently applying his judgment to the problem before him. Plaintiff declares he was under severe mental and emotional strain at the time because he had just completed the process of arrest, questioning, booking, and release on bail and had been without sleep for forty hours. It is possible that exhaustion and emotional turmoil may wholly incapacitate a person from exercising his judgment. As an

abstract question of pleading, plaintiff has pleaded that possibility and sufficient allegations to state a case for rescission.

Undue influence in its second aspect involves an application of excessive strength by a dominant subject against a servient object. Judicial consideration of this second element in undue influence has been relatively rare, for there are few cases denying persons who persuade but do not misrepresent the benefit of their bargain. Yet logically, the same legal consequences should apply to the results of excessive strength as to the results of undue weakness. Whether from weakness on one side, or strength on the other, or a combination of the two, undue influence occurs whenever there results ''that kind of influence or supremacy of one mind over another by which that other is prevented from acting according to his own wish or judgment, and whereby the will of the person is overborne and he is induced to do or forbear to do an act which he would not do, or would do, if left to act freely.'' (*Webb* v. *Saunders*, 79 Cal.App.2d 863, 871 [181 P.2d 43].) Undue influence involves a type of mismatch which our statute calls unfair advantage. (Civ. Code, § 1575.) ▆▆▆ Whether a person of subnormal capacities has been subjected to ordinary force or a person of normal capacities subjected to extraordinary force, the match is equally out of balance. If will has been overcome against judgment, consent may be rescinded.

The difficulty, of course, lies in determining when the forces of persuasion have overflowed their normal banks and become oppressive flood waters. There are second thoughts to every bargain, and hindsight is still better than foresight. Undue influence cannot be used as a pretext to avoid bad bargains or escape from bargains which refuse to come up to expectations. A woman who buys a dress on impulse, which on critical inspection by her best friend turns out to be less fashionable than she had thought, is not legally entitled to set aside the sale on the ground that the saleswoman used all her wiles to close the sale. A man who buys a tract of desert land in the expectation that it is in the immediate path of the city's growth and will become another Palm Springs, an expectation cultivated in glowing terms by the seller, cannot rescind his bargain when things turn out differently. If we are temporarily persuaded against our better judgment to do something about which we later have second thoughts, we must abide the consequences of the risks inherent in managing our own affairs. (*Estate of Anderson,* 185 Cal. 700, 706-707 [198 P. 407].)

However, overpersuasion is generally accompanied by certain characteristics which tend to' create a pattern. The pattern usually involves several of the following elements: (1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, (7) statements that there is no time to consult financial advisers or attorneys. If a number of these elements are simultaneously present, the persuasion may be characterized as excessive. The cases are illustrative:

*Moore* v. *Moore*, 56 Cal. 89, 93, and 81 Cal. 195 [22 P. 589, 874]. The pregnant wife of a man who had been shot to death on October 30 and buried on November 1 was approached by four members of her husband's family on November 2 or 3 and persuaded to deed her entire interest in her husband's estate to his children by a prior marriage. In finding the use of undue influence on Mrs. Moore, the court commented: "It was the second day after her late husband's funeral. It was at a time when she would naturally feel averse to transacting any business, and she might reasonably presume that her late husband's brothers would not apply to her at such a time to transact any important business, unless it was of a nature that would admit of no delay. And as it would admit of delay, the only reason which we can discover for their unseemly haste is, that they thought that she would be more likely to comply with their wishes then than at some future time, after she had recovered from the shock which she had then so recently experienced. If for that reason they selected that time for the accomplishment of their purpose, it seems to us that they not only took, but that they designed to take, an unfair advantage of her weakness of mind. If they did not, they probably can explain why they selected that inappropriate time for the transaction of business which might have been delayed for weeks without injury to anyone. In the absence of any explanation, it appears to us that the time was selected with reference to just that condition of mind which she alleges that she was then in.

"Taking an unfair advantage of another's weakness of mind is undue influence, and the law will not permit the retention of an advantage thus obtained. (Civ. Code, § 1575.) "

*Weger* v. *Rocha*, 138 Cal.App. 109 [32 P.2d 417]. Plaintiff,

while confined in a cast in a hospital, gave a release of claims for personal injuries for a relatively small sum to an agent who spent two hours persuading her to sign. At the time of signing plaintiff was in a highly nervous and hysterical condition and suffering much pain, and she signed the release in order to terminate the interview. The court held that the release had been secured by the use of undue influence.

*Fyan* v. *McNutt* (1934) 266 Mich. 406 [254 N.W. 146]. At issue was the validity of an agreement by Mrs. McNutt to pay Fyan, a real estate broker, a 5 percent commission on all moneys received from the condemnation of Mrs. McNutt's land. Earlier, Fyan had secured an option from Mrs. McNutt to purchase her land for his own account and offer it for sale as part of a larger parcel to Wayne County for an airport site. On July 25 Fyan learned from the newspapers that the county would probably start condemnation proceedings rather than obtain an airport site by purchase. Fyan, with four others, arrived at Mrs. McNutt's house at 1 a.m. on July 26 with the commission agreement he wanted her to sign. Mrs. McNutt protested being awakened at that hour and was reluctant to sign, but Fyan told her he had to have the paper in Detroit by morning, that the whole airport proposition would fall through if she did not sign then and there, that there wasn't time to wait until morning to get outside advice. In holding the agreement invalid the Michigan Supreme Court said: ''The late hour of the night at which her signature was secured over her protest and plea that she be given until the next day to consider her action, the urge of the moment, the cooperation of the others present in their desire to obtain a good price for their farm lands, the plaintiff's anxiety over the seeming weakness of his original option, all combined to produce a situation in which, to say the least, it is doubtful that the defendant had an opportunity to exercise her own free will. . . . A valid contract can be entered into only when there is a meeting of the minds of the parties under circumstances conducive to a free and voluntary execution of the agreement contemplated. It must be conceived in good faith and come into existence under circumstances that do not deprive the parties of the exercise of their own free will.''

The difference between legitimate persuasion and excessive pressure, like the difference between seduction and rape, rests to a considerable extent in the manner in which the parties go about their business. For example, if a day or two after Odorizzi's release on bail the superintendent of the school district

had called him into his office during business hours and directed his attention to those provisions of the Education Code compelling his leave of absence and authorizing his suspension on the filing of written charges, had told him that the district contemplated filing written charges against him, had pointed out the alternative of resignation available to him, had informed him he was free to consult counsel or any adviser he wished and to consider the matter overnight and return with his decision the next day, it is extremely unlikely that any complaint about the use of excessive pressure could ever have been made against the school district.

But, according to the allegations of the complaint, this is not the way it happened, and if it had happened that way, plaintiff would never have resigned. Rather, the representatives of the school board undertook to achieve their objective by overpersuasion and imposition to secure plaintiff's signature but not his consent to his resignation through a high-pressure carrot-and-stick technique—under which they assured plaintiff they were trying to assist him, he should rely on their advice, there wasn't time to consult an attorney, if he didn't resign at once the school district would suspend and dismiss him from his position and publicize the proceedings, but if he did resign the incident wouldn't jeopardize his chances of securing a teaching post elsewhere.

Plaintiff has thus pleaded both subjective and objective elements entering the undue influence equation and stated sufficient facts to put in issue the question whether his free will had been overborne by defendant's agents at a time when he was unable to function in a normal manner. It was sufficient to pose ". . . the ultimate question . . . whether a free and competent judgment was merely influenced, or whether a mind was so dominated as to prevent the exercise of an independent judgment." (Williston on Contracts, § 1625 [rev. ed.] ; Rest., Contracts, § 497, com. c.) The question cannot be resolved by an analysis of pleading but requires a finding of fact.

We express no opinion on the merits of plaintiff's case, or the propriety of his continuing to teach school (Ed. Code, § 13403), or the timeliness of his rescission (Civ. Code, § 1691). We do hold that his pleading, liberally construed, states a cause of action for rescission of a transaction to which his apparent consent had been obtained through the use of undue influence.

The judgment is reversed.

Roth, P. J., and Herndon, J., concurred.