[Civ. No. 24999.   First Dist., Div. Four.   June 20, 1969.]

ANGELO SABELLA et al., Plaintiffs and Respondents, v. IRVING B. LITCHFIELD, Defendant and Appellant.

Freitas, Allen, McCarthy, Bettini & MacMahon and Lloyd Tunik for Defendant and Appellant.

Gladstein, Andersen, Leonard & Sibbett and Norman Leonard for Plaintiffs and Respondents.

DEVINE, P. J.—Plaintiffs, as trustees for the health and welfare fund of a culinary workers' union, were awarded judgment on a directed verdict against appellant, the owner of a restaurant. The cause of action is upon appellant's contractual liability under trust provisions relating to health and welfare benefits in a collective bargaining agreement.

Appellant contends that the agreement was signed by him under duress and undue influence, consisting of the threat of a representative of the union to picket the restaurant on the night on which a dinner was to be given in honor of the sheriff at appellant's restaurant. The banquet was to be a

sizeable event; preparations were far advanced and the guest list included persons of prominence in the county.

The sheriff learned of the likelihood of picketing and he arranged a meeting at which he, appellant and the attorney for the union discussed the matter. During the meeting, the sheriff announced to appellant that he would cancel the dinner if a single picket appeared. The sheriff told appellant, however, that he did not want appellant to sign on his behalf because of the commitment for the dinner. Following a meeting of several hours, appellant signed the contract, saying that he did so under duress. Appellant handed the contract to the sheriff, and it was agreed by him, at appellant's request (to which the union's representative had no objection) that the contract would not be delivered to the union until Monday. (The banquet was to be on Saturday.) The sheriff, in agreeing to this arrangement, made it on condition that no one would attempt to repudiate it. The meeting adjourned with drinks for all interested parties.

■ The union had threatened to use economic sanctions to obtain appellant's signature to the agreement; but it is recognized that the use of economic pressure, including peaceful picketing, in collective bargaining does not constitute duress, provided illegal means are not used. (*McKay* v. *Retail Auto. Salesmen's Local Union No. 1067,* 16 Cal.2d 311, 319 [106 P.2d 373].) Because the union had a legal right to picket, its threat to exercise that right was not an act of duress or undue influence. (*Marshall* v. *Packard-Bell Co.,* 106 Cal.App.2d 770, 774 [236 P.2d 201].) Nor did the union's actions become unlawful because they might cause a breach of the oral contract between appellant and the sheriff for the banquet. (*Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].)

■ It is conceivable that a sudden demand, utterly surprising in its terms, might, under some circumstances, cause an employer to be so distraught that he would be unable to make a real decision, but would yield his signature under emotional stress, and that the agreement would be invalid. But this is not such a case. Appellant had signed contracts with the union in other years. He had a running dispute with the union about alleged overpayments made by him. He had been present at a meeting of the labor council at which the union's complaint against him had been discussed. He had been warned on several occasions that the union intended to picket unless he signed.

■ The point is made by appellant that he did not have a chance to read the proposed contract, although he asked for that opportunity. He had wanted a "couple of days" in which to think it over, saying that after he understood what it meant, possibly he would sign it, possibly not. The "couple of days," of course, would have taken the matter beyond the date of the banquet, would have allowed undisturbed use by appellant of labor, and would have shifted the economic advantage.

If the union had inserted into the contract some unusual terms made applicable to appellant specially, and not contained in contracts with other employers generally, perhaps our conclusion would be different. But the contract was the same for all employers. The election was appellant's: to make the common agreement and avoid the sanction of picketing, or to refuse it and face cancellation of the banquet. Obviously, there was to be no choice as to acceptable parts of the contract.

We are of the opinion that if, after having read the contract, appellant decided that the trust provisions were unacceptable, he was not entitled simply to stand by without repudiating the whole contract, to accept the benefits of the intermission of the union's onset, to await suit and then to defend upon the ground that he had not known, at the time of signing, of the inclusion of the trust provisions. Duress would invalidate the entire contract. (See *Lewis* v. *Lowry*, 322 F.2d 453, 456.)

■ Appellant cites *Odorizzi* v. *Bloomfield School Dist.*, 246 Cal.App.2d 123 [54 Cal.Rptr. 533]. In that case a school teacher's resignation was held to be possibly invalid (the case was decided on demurrer) where it was alleged to have been made under threats of criminal charges, of publicity, of loss of chances of employment elsewhere; and the plaintiff had signed during a period of emotional turmoil, multiple persuaders being present. Here, there had been long standing differences between the employer and the union which culminated with a demand, accompanied by threat of the union's recognized right to picket, that the employer sign a contract of the same sort as that used generally in the county.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1969.