Filed 5/29/25  Hagele v. Kahn CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| MICHAEL HAGELE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MATHEW KAHN et al.,<br><br>　　　Defendants and Appellants, | A171477<br><br>(San Francisco County<br>Super. Ct. No. CGC-24-614474) |

Defendants Mathew Kahn and Neil Rideout appeal from a trial court order denying their anti-SLAPP[1] motion seeking to strike plaintiff Michael Hagele's complaint.  We reverse because Hagele has failed to demonstrate a probability that he will prevail on his complaint.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Hagele is an attorney.  According to his complaint, the three parties in this action all held or acquired ownership interests in a company doing business as the Cigar Bar and Grill in San Francisco.  The complaint alleged

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)  The anti-SLAPP motion was brought under Code of Civil Procedure section 425.16 (the "anti-SLAPP statute").  All undesignated statutory references are to the Code of Civil Procedure.

1

that the parties used company credit cards for personal expenses and treated them as membership distributions, although the complaint acknowledged that Hagele's personal expenditures were "historically greater than Kahn or Rideout's." The complaint stated that the parties agreed to an arrangement for equalizing payments to account for their personal-expenditure debts.

In 2019, a purported agreement was allegedly entered under which Kahn would accept a 10 percent increase in the membership interest to be "funded by Hagele deducting $115,000 from Kahn's share of the equalizing payments." The complaint stated that by January 2020, Kahn's increased membership interest "was fully funded by Hagele deducting the $115,000 from Kahn's share of the equalizing payments." According to the complaint, however, "Kahn repudiated the agreement" in June 2020.

In October 2020, an attorney hired by Kahn and Rideout sent Hagele an email, which stated as follows: "Hi Michael. We represent Matt Kahn. I left you a couple of voicemail messages advising that [Kahn] disputes that he purchased an additional 10% of the [company] from you for approximately $115,000. We agree with [Kahn's] position. [Kahn] has also raised additional issues regarding your use of the company credit card. I suggested in my voicemail messages that you and I try to resolve the outstanding issues between you and [Kahn] and the business. I again respectfully request that you, or your attorney, if you prefer, give me a call at either of my below listed numbers or otherwise contact me. If we do not hear back from you, it will leave us no option but to move forward with litigation. Thank you for your anticipated cooperation. Joe." (Paragraph breaks omitted.)

The parties failed to resolve the dispute, and in March 2021, Kahn sent Hagele an email, which stated as follows: "Mike, Please see attached. We are still open to mediation. Please email . . . us [with] comments or

2

resolutions.  [Rideout and Kahn].” (Paragraph breaks omitted.)  Attached to the email was a draft complaint.  This draft complaint was attached to Hagele’s complaint in this action, and it is the principal source of Hagele’s contention that he was menaced.

The draft complaint sought a declaration that any purported agreement regarding the increase of Kahn’s membership interest was not legally binding, and it alternatively sought a declaration of the parties’ respective membership interests and voting rights.  In his appellate briefing, Hagele acknowledges that the validity of the agreement regarding the 10 percent membership interest was a “good faith” dispute between the parties.

The draft complaint contained some allegations that are central to the issues in this appeal.  These allegations were that Hagele used “[c]ompany funds for personal expenditures . . . without making payments” and that “Hagele recorded such personal  expenditures as business expenses.”  In his complaint in this action, Hagele alleged that the draft complaint’s allegations were known to be false and made in bad faith.  He characterized them as “accus[ing him] of unethical and criminal conduct that would be injurious to [his] character and subject him to possible criminal and California State Bar investigations.”  Also according to Hagele, defendants’ attorney told him “it would not look good for someone in Hagele’s position as an attorney to have [the] allegations in the proposed Complaint.”  He alleged that in order to prevent the filing of the draft complaint, in May 2021 he agreed to sell his interest in the company “for much less than it was worth.”  The sale took the form of a “Settlement Agreement and General Mutual Releases and a Membership Interests Purchase and Option Agreement.”

Three years later, in May 2024, Hagele brought this suit against Kahn and Rideout to rescind the settlement agreement.  His complaint alleged a

3

single cause of action, for "rescission based upon menace." (Capitalization omitted.) Hagele claimed that Kahn and Rideout engaged in legal menace by threatening litigation to induce him into signing the settlement agreement.

In response to Hagele's complaint in this action, Kahn and Rideout filed their anti-SLAPP motion, arguing that Hagele's claim arose from their protected speech and that Hagele could not show that he was reasonably likely to prevail on his claim, both because he had failed to show they engaged in menace and for the independent reason that the complaint was barred by the litigation privilege. Hagele opposed the motion, arguing that he had submitted sufficient facts to establish a prima facie case, and he contended that the litigation privilege did not apply since the privilege does not apply to claims such as his that sound in contract.

The trial court denied the motion, finding that Hagele had demonstrated both that his claim was legally sufficient and that there was sufficient evidence to establish a prima facie case on the claim. And the court further found that defendants failed to show that the litigation privilege barred the action since there was a factual question over whether litigation was seriously proposed and contemplated in good faith as a means to resolving the parties' dispute.

## II.
### DISCUSSION

A. *General Legal Standards*

"The anti-SLAPP statute allows a defendant to move to dismiss 'certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity.' [Citation.] The heart of the statute states: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public

4

issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'  (§ 425.16, subd. (b)(1).)

"In deciding whether to grant a defendant's anti-SLAPP motion, courts engage in a two-step, burden-shifting analysis.  [Citation.]  Under the first step, a court considers whether the defendant has made 'a prima facie showing that the plaintiff's "cause of action . . . aris[es] from" an act by the defendant "in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue." '  [Citation.]  To make such a showing, the defendant need not demonstrate that its actions were protected as a matter of law, but need only establish a prima facie case that the actions fell into one of the categories listed in section 425.16, subdivision (e).  [Citation.]  If the defendant cannot make such a showing, the anti-SLAPP motion must be denied, and the plaintiff is entitled to continue to litigate the cause of action. [Citations.]

"But if the defendant *can* make such a showing, the analysis proceeds to the second step where the burden shifts to the plaintiff to demonstrate 'that there is a probability that [it] will prevail on the [cause of action].' (§ 425.16, subd. (b)(1).)  To meet this burden, ' "the plaintiff 'must demonstrate that the [cause of action] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " '  [Citation.]  If the plaintiff meets this burden, the anti-SLAPP motion must be denied, and the plaintiff is entitled to continue to litigate the cause of action."  (*Golden Gate Land Holdings, LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 88–89 (*Golden Gate*).)

When, as here, a defendant relies on an affirmative defense—such as the litigation privilege—in arguing that the cause of action is legally insufficient and not supported by sufficient facts, courts have diverged on which party bears the burden. "Some courts state a defendant bears the burden of proof on an affirmative defense. [Citations.] Others state the burden ultimately remains on the plaintiff to demonstrate [the] defense is ' " 'not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.' " ' " (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 434, fn. 7.) In either event, when "evaluating an affirmative defense in connection with the second prong of the analysis of an anti-SLAPP motion, the court . . . generally should consider whether the defendant's evidence in support of an affirmative defense is sufficient, and if so, whether the plaintiff has introduced contrary evidence, which, if accepted, would negate the defense." (*Id.* at p. 434.)

In sum, "an anti-SLAPP motion may be granted only if the defendant first shows that its conduct was constitutionally protected and the plaintiff then fails to 'demonstrate its claims have at least "minimal merit." ' [Citation.] Stated another way, a trial court may *grant* an anti-SLAPP motion—i.e., strike a claim—only if it finds, after applying *both* steps of the analysis, that the claim is based on protected activity *and* lacks minimal merit. But a trial court must *deny* an anti-SLAPP motion—i.e., allow the claim to proceed—if it finds, after applying *either* step of the analysis, that the claim is not based on protected activity *or* has at least minimal merit. We review de novo the denial of an anti-SLAPP motion." (*Golden Gate*, *supra*, 81 Cal.App.5th at p. 89.)

6

*B.*    *Hagele's Complaint Lacks Merit Because Defendants' Allegations in the Draft Complaint Were Insufficient as a Matter of Law to Establish Menace and Were Protected by the Litigation Privilege*

There is no dispute that Kahn and Rideout satisfied their initial burden of showing that the complaint in this action was based on protected activity, as Hagele acknowledged in his opposition below that his claim arose from protected activity. Accordingly, the issue in this appeal centers on the second step of the anti-SLAPP analysis, specifically whether the trial court erred in finding that Hagele satisfied his burden of showing that the complaint has minimal merit. The court found that Hagele satisfied this burden because there are disputed factual issues as to whether Kahn and Rideout knowingly made false allegations in their draft complaint and as to the application of the litigation privilege. We conclude to the contrary that the complaint must be stricken because defendants' allegations in the draft complaint were insufficient as a matter of law to establish menace or to negate the application of the litigation privilege.

To determine whether the plaintiff has shown at the second stage that the complaint has minimal merit "the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) "The plaintiff must do so with admissible evidence. [Citation.] 'We decide this step of the analysis "on consideration of 'the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).) Looking at those affidavits, '[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff.' " ' " (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld*

*LLP* (2017) 18 Cal.App.5th 95, 112–113.) "This second step has been described as a ' "summary-judgment-like procedure." ' [Citation.] A court's second step 'inquiry is limited to whether the [opposing party] has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. [The court] . . . evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' " (*Id.* at p. 113.)

Hagele's complaint seeks recission of the parties' prior settlement agreement on the theory that Kahn and Rideout menaced him into entering the agreement. "[I]n California menace is technically a threat of duress or a threat of injury to the person, property, or character of another." (*Odorizzi v. Bloomfield Sch. Dist.* (1966) 246 Cal.App.2d 123, 128.) " '[T]he action or threat in duress or menace must be unlawful, and a threat to take legal action is not unlawful unless the party making the threat knows the falsity of the claim.' " (*Ibid.*) A complaint alleging menace is sufficient if, stripped of its conclusions, it sets forth sufficient facts to justify legal relief. (*Id.* at p. 127.)

We are unconvinced that the allegations in the draft complaint— stripped of the characterizations and conclusions Hagele ascribes to them— amounted to menace. In his appellate briefing, Hagele acknowledges that the validity of the purported deal for him to transfer a 10 percent membership interest to Kahn in exchange for an offset of his personal debt was a "good faith dispute between the parties." Thus, his argument on appeal rests on allegations about two themes in the draft complaint that he contends were separate from that good-faith dispute. The first theme was an allegation that "Hagele recorded his personal uses of Company funds as business expenses."

The second theme was a set of allegations that Hagele used company "funds for personal uses without making equalizing payments."

We recognize that the parties dispute some of the circumstances surrounding these themes, but the allegations related to them cannot be considered to constitute menace as a matter of law under the facts that are undisputed. The undeveloped allegation in the draft complaint that Hagele "recorded" his expenditures as business expenses is too vague and uncertain on its face to be sufficiently menacing. No allegations describe the purpose of the recording or where it occurred. We cannot agree with Hagele that the allegation should or must be interpreted as alleging "criminal conduct," i.e., "tax evasion." And even less menacing were the set of allegations that Hagele used company funds for personal uses without making equalizing payments. The first part of those allegations—that Hagele used a company asset—i.e., a credit card—to pay personal expenses is undisputed. And the second part—that Hagele did not pay for those expenses—is *directly* connected to the acknowledged good-faith dispute. If the deal for Hagele to pay off his personal credit-card obligations by transferring a 10 percent interest in the company to Kahn was invalid, as alleged in the draft complaint, then it would be necessarily true that Hagele had *not* paid for his personal expenditures that were part of that deal.

Even if we could construe the allegations in the draft complaint to be sufficiently menacing, Hagele's complaint still lacked minimal merit because

9

the allegations were protected by the litigation privilege.[2]

" '[C]ommunications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation],[3] [and] such statements are equally entitled to the benefits of section 425.16.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) " ' " 'A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes a defendant's liability on the claims.' " ' " (*Osborne v. Pleasanton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 382; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 [litigation privilege relevant to second step of anti-SLAPP analysis where it presents substantive defense].)

" 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).) Indeed, the privilege " 'has been referred to as "the backbone to an effective and smoothly operating judicial system." ' " (*Id.* at pp. 1247–1248.) To achieve its broad purposes, our courts "have given the litigation privilege a broad interpretation." (*Id.* at p. 1241.) "To be protected

---

[2] We reject Hagele's contention that the litigation privilege is inapplicable to his request for recission on the ground that it is related to a contract. The privilege applies to contract claims when it furthers the privilege's underlying policies. (See, e.g., *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1169–1170.) A rule rejecting the application of the privilege to requests to rescind a settlement agreement would contravene these policies by impeding open settlement discussions and discouraging settlements. (See, e.g., *Flickinger v. Finwall* (2022) 85 Cal.App.5th 822, 838.)

[3] Civil Code section 47, subdivision (b), provides that a privileged publication is one that is made in any judicial proceeding.

by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.' [Citation.] This is 'part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action.'" (*Id.* at p. 1251.)

The privilege protects "communications with ' "some relation" to an *anticipated* lawsuit.'" (*Osborne v. Pleasanton Automotive Co., LP*, *supra*, 106 Cal.App.5th at p. 382.) "A party resisting the assertion of the litigation privilege . . . must do more than simply 'assert[ ] that litigation to which the statement is related is without merit, and therefore the proponent of the litigation could not in good faith have believed it had a legally viable claim. To adopt such an interpretation would virtually eradicate the litigation privilege for all but the most clearly meritorious claims.'" (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 790.)

The allegations in the draft complaint about the two themes discussed above were protected by the litigation privilege. As we have said, the allegation that Hagele "recorded" his expenditures as business expenses is vague and does not necessarily allege unlawfulness on Hagele's part. And the set of allegations that Hagele used company funds for personal uses without making equalizing payments were directly connected to the draft complaint's "good-faith" dispute regarding the validity of the purported deal to increase Kahn's membership interest by 10 percent. In short, Hagele has pointed to insufficient evidence that, even if accepted, would negate the application of the litigation privilege.

We are required to interpret broadly both the anti-SLAPP statute and the litigation privilege. (See § 425.16, subd. (a); *Action Apartment*, *supra*, 41 Cal.4th at p. 1241.) In doing so, we must conclude that Hagele failed to

11

demonstrate a probability that he will prevail on his complaint and that the trial court was therefore mistaken in denying the anti-SLAPP motion.

## III.
### DISPOSITION

The trial court's order denying appellants' anti-SLAPP motion is reversed. The case is remanded with directions to the trial court to enter a new and different order granting the motion. Appellants are awarded their costs on appeal.

_____

Humes, P. J.


We concur:


_____

Banke, J.


_____

Smiley, J.


*Kahn, et al. v. Hagele* (A171477)